### HUMMER v. MIDLAND CASUALTY CO.

1. INSURANCE—NOTICE OF INJURY—PROOF OF LOSS—ACCIDENT INSURANCE—LETTERS—EVIDENCE.

Where the evidence of an insured tended to establish that he sent notice to defendant of his injury, pursuant to the conditions of his accident policy, that he received a reply signed by one of defendant's claim clerks, and that the defendant cashed a check contained in his letter, the court was not in error in holding that the sending of the notice was established.

2. SAME—NOTICE—DELAY.

The provisions of such accident policy requiring notice as soon as possible after suffering an injury, could not be held, as matter of law, to have been intended only as a protection against fraud and misrepresentation; and it was plaintiff's duty to give notice as promptly as possible after an injury to his eye; delay for five months or over was not a compliance therewith.

3. SAME—EVIDENCE.

No reversible error was committed, on the trial, in re-

opening the case, after plaintiff closed his testimony, to admit testimony of his physician to show the contents of a letter which had been attached to the proofs of injury, but which contained no facts prejudicial to the defense.

4. SAME—EVIDENCE—CONCLUSION—EXPERT WITNESSES.

It was not erroneous to permit the attending physician, who knew plaintiff's condition, to give his opinion that plaintiff was incapacitated from attending to his business during about three and a half months.

5. SAME—INDEMNITY—CAUSE OF DISABILITY.

But plaintiff was not entitled, under a policy providing that the insurer should pay an indemnity of $2,500 if the injury resulted in the loss of an eye (or other similar injuries) within 100 days from the date of the accident, that in case the injury from the date of accident rendered him continuously unable to perform any of his business duties and resulted in the loss of one eye, he should be entitled to a weekly indemnity of $25, to recover, in addition to the $2,500, the weekly indemnity so provided for, when it appeared that the injury to his eye was not serious, but by some mistake he obtained a medicine containing caustic acid which caused further injury and resulting blindness; and that he was not continuously disabled from the date of his original injury.

6. SAME—WAIVER—FORFEITURE.

In the absence of provisions in the policy working forfeiture in case notice of the injury was not given as soon as possible, or in case proofs were not filed within the time stated, the insurer might waive such conditions, and a waiver was established by testimony that showed the insurer had no intention of complaining about the failure to give notice in the stated period, and was not prejudiced by the neglect.

7. SAME—WAIVER—PROOFS OF INJURY.

Testimony that the loss of plaintiff's eye was caused by the introduction into it of acid, that the proofs of loss or injury were filed within 100 days from the date of the accident, and within 60 days from the time that plaintiff became satisfied what the result would be, *held*, to be within the conditions of the policy.

Error to Kent; Perkins, J. Submitted April 17, 1914. (Docket No. 55.) Decided July 24, 1914. Rehearing denied December 19, 1914.

Assumpsit by George P. Hummer against the Midland Casualty Company on a policy of accident insurance. Judgment for plaintiff. Defendant brings error. Reduced and affirmed.

*Cleland & Heald* (*McKenzie Cleland,* of counsel), for appellant.

*Diekema, Kollen & Ten Cate,* for appellee.

A policy issued by the defendant company insured the plaintiff against bodily injury through accidental means, and for certain injuries, among them the loss of one eye, promised an indemnity of $2,500 if the injury within 100 days from the date of the accident resulted in such a loss. It further promised him, in case the injury from the date of the accident rendered him continuously unable to perform any of his business duties and resulted in the loss of one eye, $25 a week as long as he lived and suffered such total disability. It was a part of the contract of insurance that written notice of an accident, together with full particulars thereof, be given to the defendant at its home office in Chicago by the insured, beneficiary, or legal representative "as soon as possible after the accident," and that within 60 days after the loss of an eye, or after the termination of disability, "affirmative proofs thereof must be filed with the company."

Claiming to be entitled under his policy to the specific indemnity of $2,500 and to a weekly indemnity in addition thereto, plaintiff brought this suit, and upon the trial offered testimony tending to prove the following facts: On Saturday, September 16, 1911, while he was walking on the street, some foreign substance entered his right eye. On account of it he suf-

fered, and continued to suffer, pain. On Monday, September 18th, he went from his home in Grand Rapids to his business in Holland, kept a business engagement in Grand Rapids that evening, and at about 10 o'clock consulted Dr. Welsh, an oculist, who treated the eye. He found it inflamed, but found no foreign substance in it, and he gave plaintiff medicine to be dropped into the eye if the pain became too severe. Plaintiff, upon retiring, used some of the preparation furnished him by the doctor, with the result that pain was greatly increased. He returned to the office of the doctor, where it was discovered that in the medicine furnished him there was a caustic acid, and that the eye had been affected by it. Tuesday, September 19th, he went to Holland, but using medicine in the eye to relieve pain. He returned to Grand Rapids at night, again visiting the oculist. He went to Holland on Wednesday, staying but a short time, spent the remainder of the day with the oculist, his eye being frequently treated, went to bed, and remained there for about six weeks, with a nurse in attendance, and after that for ten weeks he suffered from sleeplessness. His nurse left about November 1st. After November 1st he remained in the house for some time under the advice of his physician, and then by advice of his physician he went sometimes out of doors. During the time when he was taking exercise, and thereafter until he returned to his office, his stenographer or bookkeeper at Holland came to see him about once a week for an hour or so, his superintendent came once or twice; he had a telephone at his residence. During this period he did some, but little, business, and such as he did was by consultation with his employees who called upon him. He wore a bandage on his eye until January, or later. About the middle of November there were hemorrhages in the eye. Early in December he went to Chicago to con-

sult an oculist. In April he consulted an oculist at Toledo. Neither of them advised him that sight would ever be restored to the eye. Dr. Welsh, whom he originally consulted, so expressed himself about May 1st. Under date February 9, 1912, he addressed to the defendant at Chicago a letter, inclosing a check for his premium from February 13, 1912, to February 13, 1913, and containing the following:

"I am sorry to advise you at this time of a very severe injury which I received to one of my eyes the second week in September. The accident occurred by burning with an acid which caused an ulcer and I was laid up in a dark room for something like eight weeks and totally incapacitated for business for something like 3½ months. I am now able to give a little attention to business; but the eye is still bothering me. I think I shall eventually have the sight restored in it, though not wholly.

"Will you advise me what benefits I am entitled to under my policy No. 100. This will be notice to you of claim on my policy. If you have blank forms which are necessary to fill out I would suggest that you forward one to me at once."

The check which was inclosed with this letter was paid February 16th by the bank in Holland upon which it was drawn, and it bore then the indorsement of defendant by its treasurer. Under date February 13th plaintiff received a letter purporting to be signed by the defendant by "G. H. Cavanaugh, Claim Dept.," which reads:

"We are today in receipt of your notification of recent disability because of an injury to your eye and are accordingly inclosing you one of our regular accident claim blanks, which you will kindly have completed and forward to this office. In making out this blank, be sure that you answer all questions fully and also that your doctor does the same, as it is absolutely necessary for us to have full information before we can adjust a claim.

"Assuring you that upon receipt of the blank prop-

erly completed the matter will be given prompt attention."

He received with it a blank form to be used for filing proof of claim. He afterwards, and under date May 13, 1912, filled out the form, in which he stated that the injury for which he claimed indemnity was sustained on the 16th of September, 1911, about 1 o'clock p. m., and he described the location, nature, and extent of it as a "foreign substance in right eye," and the cause of the accident "a foreign body blew into eye by high wind;" that he was first treated for the injury September 17th about 10 o'clock p. m. He claimed further that solely on account of the injury described he was continuously and wholly prevented from performing every duty pertaining to his business from September 16, 1911, to February 15, 1912. This proof was sent to the defendant, accompanied by a physician's certificate, made out and signed by Dr. Welsh under date May 6, 1912. In this certificate the injury is described as a foreign body in the eye, and in answer to one of the questions contained in the blank he wrote, "See attached letter," and to two others, "See letter." The certificate contained the following question:

"In your opinion as a physician, has this injury been sufficiently severe to continuously and wholly prevent him from performing every duty pertaining to his occupation or business? If so, for what time."

To which he answered:

"From 17th day of September to 15th day of February, 1912."

Under date May 20th plaintiff received a letter signed by the defendant, by its president, reading:

"Your letter of May 13th inclosing physician's certificate and your personal statement, also detailed letter from your physician regarding claim for loss of eye, was duly received.

"I was personally absent from the city the latter part of last week, otherwise would have acknowledged receipt of your papers before. We will give these papers our prompt consideration and let you hear from us accordingly."

Under date June 4th he received from the defendant another letter, in which it is stated that:

"We understood that you were coming to Chicago, and would come in to see us and have been looking forward to your visit to the city and your call upon us"—

And asking him when he might be expected in Chicago. Plaintiff called at the office in Chicago, but, owing to the engagement of general counsel for defendant, and perhaps for other reasons, their conversation did not reach the matter of his claim, and on June 11, 1912, he received a letter signed by the general counsel for the defendant, referring to the call at the office, asking if plaintiff expected to be in the city again soon, and, if so, expressing a desire that he would call upon him at his office. This letter the plaintiff answered under date June 17th, stating he could not say when he would be in Chicago; that, if it was necessary, he would go over some time within two weeks. Under date July 18th the general counsel wrote plaintiff, stating that there was no special haste in the matter and:

"I merely wished to talk over with you some matters connected with your claim, as we are prepared to take your word for somethings about which ordinarily we would require additional proof, and if it should not be entirely convenient for you to come to Chicago, I will ask Mr. Puse, of our claim department, to come over and see you."

Again, on July 30th, the general counsel wrote to him, stating that he had just returned to the city and was anxious to take the matter up with him at his earliest convenience, asking him to call on his next

visit to the city, and if that was not convenient he would send Mr. Puse, of the claim department. August 22d the plaintiff wrote defendant a letter in which, among other things, he says:

"From my standpoint I can see no reason whatever for any further delay. I shall expect remittance promptly by return mail to close this matter up."

Under date August 24th the general counsel wrote plaintiff, regretting the delay in passing upon his claim, denying any liability under the policy, stating his reasons therefor as follows:

"Your policy provides for a specific indemnity of $2,500.00 for loss of one eye, provided such loss shall result within one hundred days from the date of the injury. If such loss result within one hundred days and also render the insured continually unable to perform any of his business duties, he is entitled also to the weekly indemnity provided for in section B. The policy also provides (section P) that written notice of the accident, together with full particulars thereof on account of which a claim may be made, must be given to the company at its home office as soon as possible after the accident, and that within sixty days after the loss of one eye affirmative proofs thereof must be filed with the company. The first information of any kind which the company received of this accident was conveyed in your letter of May 13th, 1912, which was nearly eight months after the occurrence of the injury and after, as you claim, the loss occurred. You will perceive that under this provision the company should have been given notice as soon as possible after September 17th, 1911, and that if the loss occurred on that date affirmative proofs thereof should have been filed with the company on or before November 17th; or, if the total loss did not occur until February 15th, that such affirmative proofs should have been filed not later than April 15th."

In reply to this the plaintiff sent a letter of considerable length, which was followed by further correspondence, during the period of which, and about

a month after his first call at defendant's office, plaintiff saw general counsel for the defendant and discussed with him for a few minutes the matter of his injury. The agent referred to in the correspondence as likely to be sent to Grand Rapids did not, to plaintiff's knowledge, go there.

Plaintiff is manager of the West Michigan Furniture Company, which makes bedroom and dining room furniture. Part of his time is spent in the office and part of the time in the factory; he having general charge of the correspondence and policy of the business. It appears to be conceded, at least is not seriously contested, that the loss of the eye was occasioned by acetic acid contained in the solution given to plaintiff by Dr. Welsh to use in his eye.

Plaintiff having rested his case, the defendant moved the court to direct a verdict because sufficient notice was not given by the plaintiff of the injury, the proofs showing that the notice was not given as soon as possible after the accident, because affirmative proofs of loss were not filed within the time limited in the policy, because the written claim of the plaintiff, dated May 13, 1912, stated the cause of the accident to be a foreign body blown into the eye, while the proofs showed the loss of sight was caused by hemorrhages resulting from the acid introduced into the eye by plaintiff himself. The motion was overruled, and the taking of testimony proceeded, and after it was closed the motion for a directed verdict was renewed for the reasons originally given, and a motion was made to strike out the testimony of plaintiff and Dr. Welsh in relation to the putting of acid in the eye, the manner in which it was put in, and that the testimony in relation to the effect of the acid be stricken from the record as incompetent, irrelevant, and immaterial; the act of plaintiff in putting the acid into the eye being a voluntary one, and not an acci-

dent, and for the further reason that the testimony does not correspond with the proofs submitted by the plaintiff upon which the action is based. In the course of the argument following the making of this motion, the court asked for the letter that accompanied the formal proofs, meaning the letter written by Dr. Welsh. Counsel for defendant, Mr. Cleland, said:

"I suppose they will have to get Dr. Welsh to find out about that.

"*The Court:* Who offered these blanks in evidence?

"*Mr. Cleland:* The plaintiff offered that in evidence. This is the first I have heard—

"*The Court:* Got it from the defendant company probably on notice.

"*Mr. Cleland:* Oh, we produced that.

"*Mr. Diekema:* And we asked for all letters and papers.

"*The Court:* You better open up the case and let's find out where that letter is, because it may bear upon some of the argument in advance here with reference to notice.

"*Mr. Heald:* The only way we could find out is from Chicago. * * * We assumed that the letter meant the letter of Mr. Hummer's when asked to produce these proofs.

"*The Court:* It cannot be possible that that assumption was seriously made. All the letter of Mr. Hummer states is: 'Inclosed hand you statement regarding injury to and loss of my right eye, together with physician's certificate.' Now, the physician's certificate refers three times to a letter attached; that is, attached to the certificate. That is the letter we want, and the information relates to some of the questions that have been discussed right here and now from the questions asked and answered by the physician.

"*Mr. Diekema:* And is a part of and attached to the proofs and they must have detached it."

There was further colloquy and a recess of court, after which counsel for plaintiff asked the defendant to produce a letter attached to the proof of claim made out by Dr. Welsh dated May 6, 1912, to which counsel for defendant replied that they knew nothing about

it, that plaintiff introduced the proof, it was the first time they had made a request for the information, and it came too late. Thereupon Dr. Welsh and the plaintiff were recalled, examined, and cross-examined, and in the course of their testimony it was attempted to be shown what were the contents of the letter and its course from Dr. Welsh's hands to the possession of the defendant.

Defendant preferred requests to charge which present substantially the contentions made in support of the motion to direct a verdict. The court instructed the jury that the sending by the plaintiff to the defendant of the letter of February 9, 1912, and the receipt of it by the defendant were undisputed facts in the case. He submitted to the jury four questions:

"*First,* did the accident occur resulting in the total loss of this eye—did the total loss of this eye result from this accident within 100 days from its date?

"*Second,* were the proofs of loss sent in within 60 days after the plaintiff knew that he had lost totally the sight of his right eye?

"*Third,* did the plaintiff within a reasonable time and as soon as possible after the injury give notice to the company of the accident?

"*Fourth,* if you should find that that notice was not given within a reasonable time as provided by the policy, then has the company by its acts after the proofs of loss were sent in, waived that necessary prerequisite to the rights of the plaintiff to recover in an action upon this policy?

"If you find these several questions in favor of the plaintiff, you will find for the plaintiff and estimate the damages. The plaintiff will be entitled to recover the $2,500 specific indemnity and $350 weekly indemnity upon which interest is to be reckoned at 5 per cent. from August 15, 1912.

"If you do not so find, your verdict will be for the defendant, no cause of action."

There was a verdict for plaintiff for $2,939, and judgment was entered on the verdict.

The contentions of appellant are stated in its brief as follows:

"(1) The plaintiff's failure to give the notice required by the contract relieved the company from liability.

"(2) In addition to giving notice of the accident, plaintiff was required by the terms of the contract to file proofs of loss within 60 days, and this was a condition precedent to his right of recovery.

"(3) Plaintiff was not entitled to recover both the specific indemnity for the loss of his eye and the weekly indemnity, inasmuch as there was no immediate total disability, and the policy made no provision for the payment of partial disability in connection with a specific total loss.

"(4) There was no waiver by the company of the provision of the policy relating to notice and proofs of loss.

"(5) The court erred in reopening the case after it had been closed, and admitting secondary evidence of the alleged letter claimed by plaintiff to have been attached to the proofs of loss.

"(6) The court erred in admitting the testimony of Dr. Welsh as to plaintiff's disability.

"(7) The court erred in charging the jury that the plaintiff was not required to file final proofs of loss until 60 days after he knew that such loss had occurred.

"(8) The court erred in instructing the jury that the sending by the plaintiff of the letter of February 9th and its receipt by the defendant was undisputed.

"(9) The court erred in instructing the jury that the provision of the policy relative to notice must be given a reasonable construction, taking into consideration all the facts and circumstances in the case; the nature of the injury; the length of time the plaintiff was confined to his house and bed; the consequences of the injury; the pain he suffered, if any; his general physical and material condition resulting from the injury; and the length of time between the date of the injury and the giving of the notice; plaintiff's conduct during this time; the uncertainty, if any, as to the outcome of the injury as plaintiff was advised and believed, etc.

"(10) The court erred in instructing the jury that if they found for the plaintiff he would be entitled to recover $2,850.

"(11) The court erred in instructing the jury that the provision requiring preliminary notice was inserted for the benefit and protection of the company against fraud and misrepresentation.

"(12) The court erred in instructing the jury that the company claimed that the policy issued to plaintiff had become inoperative."

Ostrander, J. (*after stating the facts*). Some of the contentions of appellant may be disposed of with little comment. It was not error to instruct the jury that the sending of the letter of February 9th and its receipt by defendant were established facts. It is true that the letter of February 9th was not produced by defendant upon notice to produce letters, and that it was stated by counsel at the trial that it was thought defendant never received it. A letter written by defendant to plaintiff states that the first information received by defendant of the alleged injury came in May with the proofs of claim, and a witness testified that there was in the files of defendant no evidence of an earlier notification. It appeared, too, that the defendant asked plaintiff to send them a copy of his letter of February 9th, and the request was refused, or ignored. But defendant's witness also testified that the letter of February 13th, which purports to answer plaintiff's letter of February 9th, and admits notice of a claimed injury to plaintiff's eye, was written upon the stationery of the defendant, and that Mr. Cavanaugh, whose name is signed to it, was a clerk in defendant's department. No error is assigned upon the introduction of the letters in evidence, and there is the evidence of the cashing by defendant of the check inclosed in plaintiff's letter of February 9th. I find no testimony which raises an issue of fact upon the subject.

The court should have instructed the jury that plaintiff did not, as soon as possible after the accident, give defendant written notice of the same and the particulars thereof, and should not have instructed them that the provision in the policy for preliminary notice was inserted to protect defendant against fraud and misrepresentation, without saying more.  The plaintiff's testimony is conclusive evidence that he might earlier have notified defendant of his accident.  It was therefore not for the jury to determine whether it was given as soon as possible and within a reasonable time. Plaintiff delayed for nearly five months to give any notice.  On Wednesday, February 20th, if not before, he was advised by the pain he suffered that the injury to his eye was serious.  He was in Chicago in December, in the latter part of that month, and in January he was looking after some of his business affairs.  For this purpose he traveled from Grand Rapids to Holland, going down perhaps a dozen times.  He was confined to his bed, he says, until about November 1st after which time he was about the house and began to go out of doors during the first half of November. What he did leads irresistibly to the conclusion that he was ignorant of the provisions of his contract, or careless or wilfully negligent about performing his duty thereunder, and that he gave, and intended to give, no preliminary notice of his injury and no notice until the result of the injury was pretty definitely known.  With the notice he gave he asked for blanks for making proofs of claim and for advice concerning the amount he was entitled to receive.  The provision in question was doubtless inserted in the contract to protect defendant from fraud and misrepresentation, but not for this purpose only.  Defendant reserved the right to examine the person of the insured in case of injury.  Its promise is to pay indemnity if the injury shall, within 100 days from the date of the accident,

result in one of the losses specified. In the absence of the required notice, in the absence, as in this case, of any notice until 5 months after an injury is received, the defendant may not, perhaps, protect itself against a demand made in good faith by the insured or by his beneficiary. Was the loss of the eye sustained solely through accidental means? Did the loss occur within 100 days of the injury? These are matters about which it is the right of defendant under the contract to satisfy itself, without litigation, and without regard to the good faith of the insured.

It was not reversible error for the court to reopen the case to learn the contents of the letter which accompanied the certificate of the physician. I do not appreciate the importance of the contents of that letter. The paper itself was a part of the proofs of loss, and should have been produced by defendant when it produced the proofs of loss pursuant to notice. If it had contained matter adverse to plaintiff's right to recover, such matter might have been of value to defendant. But that proofs of loss were filed at some time is not disputed. They were not rejected as insufficient. The nature of the injury plaintiff suffered was proven by witnesses. So it seems to me to have been immaterial whether the letter had become detached and lost or inadvertently mislaid, unless the defendant undertook to predicate some right upon its nonappearance. And I cannot conceive that what was done after discovery of its absence prejudiced defendant.

Appellant's sixth contention is based upon a ruling admitting answer to the question asked Dr. Welsh:

"Now, during those months of September, October, November, and December was Mr. Hummer incapacitated from attending to his business?"

The objection was that the question called for a conclusion. There is no merit in this. The witness

appeared to have knowledge upon the subject. Whether his unqualified affirmative answer was precisely true is another matter.

The third and tenth of the contentions of appellant must be sustained. The court advised the jury that, if otherwise entitled to recover, plaintiff should be given $350, which is indemnity at the rate of $25 per week for 14 weeks. Assuming the accident, the foundation of plaintiff's demand, occurred on September 16th, it is clear that plaintiff was not from that date thereby rendered continuously unable to perform his business duties. The disabling thing was the medical treatment of the injured member, and, while the defendant may be held liable for the loss of the eye resulting from such treatment, it is because of the original injury that liability for the result of treatment arises. I am of opinion, therefore, that upon this record the court should have advised the jury that plaintiff was not entitled to the weekly indemnity.

The questions made most important in argument are: *First,* whether defendant waived, or is estopped to assert, the failure to give the preliminary notice of the accident; *second,* whether final proofs of injury were seasonably made; and, *third,* whether there has been a proper determination of the fact that loss of the eye, the result of the injury, occurred within 100 days from the date of the accident.

The court instructed the jury that the provision of the policy as to notice of injury must be complied with before liability could be found, unless the notice was waived. Waiver may be found from circumstances which show no intention of the insurer to complain that earlier notice was not given, and which indicate that the notice given is regarded as a sufficient performance of contract duty. This is especially true when, the testimony being all before the court, it does not appear that the failure to give earlier notice has

prejudiced the insurer. I am of opinion that the court might properly have instructed the jury that under the particular contract waiver of the preliminary notice was established. *Hohn* v. *Casualty Co.*, 115 Mich. 79 (72 N. W. 1105). As to the final, affirmative, proofs, the contract penalty for failure to file them is that no suit may be begun on the policy unless within one year from the date specified for filing them. Beyond this, it cannot be said as matter of law that they were not filed within 60 days from the time plaintiff became satisfied about the result of his injury. There is testimony to support a finding that the loss of the eye occurred within 100 days from the date of the accident; that it was caused by the introduction of the acid into the eye, all attempts to avert the injury then caused having been unsuccessful.

With the exception noted, none of the errors committed upon the trial were prejudicial to defendant.

The judgment is too large by the sum of $350, and the interest on that sum at 5 per cent. from August 15, 1912, to the date of the verdict. This plaintiff may remit and the judgment may stand affirmed for the sum remaining. Otherwise the case must go down for a new trial. In any event, a substantial reduction in the amount recovered having been secured, the defendant will recover costs of this court.

MCALVAY, C. J., and BROOKE, KUHN, STONE, BIRD, MOORE, and STEERE, JJ. concurred.