## PRICE v. INDUSTRIAL COMMISSION OF UTAH.

No. 5708. Decided January 4, 1937. (63 P. [2d] 592.)

*Louis H. Callister,* of Salt Lake City, for plaintiff.

*Joseph Chez,* Atty. Gen., and *Grover A. Giles,* Deputy Atty. Gen., for defendant.

WOLFE, Justice.

On December 2, 1929, Price was awarded a pension of $85 a month by the Industrial Commission of Utah, to be paid out of the Firemen's Pension Fund. In July of 1933 this was reduced to $60 a month in accordance with chapter 33, Laws of Utah 1933. On March 2, 1935, Price, pursuant to notice from the Industrial Commission, appeared before the commission for physical examination for the purpose of rerating. As a consequence of this examination and hearing, the monthly pension of Price was reduced from $60 to $20. The modified award was based on the finding by a majority of the commission that there was a 25 per cent.

permanent loss of bodily function under subsection 3, § 42-4-4, R. S. Utah 1933, as amended by chapter 33, Laws of Utah 1933, reading as follows:

"(3) Any paid fireman or volunteer fireman who is suffering from a mental or physical disability which is the result of accident, injury or exposure while in the performance of duty, shall be entitled to a pension as follows: For a disability equal to 25% loss of bodily function as an active fireman, the sum of $20 per month; for a 50% disability, the sum of $40 per month; and for 100% disability, the sum of $60 per month; provided, however, that if such disability is removed then such pension shall cease, and be it further provided that such pension begin only after the period for which said fireman draws compensation under the Workmen's Compensation Act has ended."

A committee of physicians examined the plaintiff and gave as its report that as a human being he sustained a disability of approximately 5 per cent., but as an active fireman he sustained a 100 per cent. disability. On this finding, one of the commissioners dissented, stating:

"I do not concur with the majority of the members of the Commission in awarding a pension of $20.00 per month in this case. I feel that the applicant should be rated on the basis of loss of bodily function as an active fireman and should be paid the maximum amount as provided by law."

The Attorney General tells us that he agrees with the minority opinion of the commission because "this court has repeatedly held that every word, phrase, clause and sentence of a statute *must* be given effect and *must* be given a reasonable meaning." (Italics supplied.) If this court held that, it held nonsense because we have had statutes wherein it was impossible to give a *reasonable* or, at times, any meaning to every word, phrase, clause, or sentence. If we held we were under a bounden duty to do the impossible, we held wrongly. But we surmise that the Attorney General meant to insert in his statement the clause, "Wherever reasonably possible, effect should be given," etc. The Attorney General thinks that effect should be given to the words "as an active fireman." The ma-

jority of the commission thought that it was impossible to give effect to the word "bodily," and at the same time to the words "as an active fireman." Whichever way the phraseology is taken, it is so ambiguous that it should be clarified by the legislature.

Perhaps the best approach to the problem is to consider the effect of omitting the word "bodily," leaving in the words "function as an active fireman," and then leave in the word "bodily" and omit the words "as an active fireman," and, thirdly, see if both can be given effect with any kind of sense. Certainly, on first impression, a man cannot suffer any more *loss of bodily function* as a lawyer, musician, foreman, bookkeeper, brakeman, or any other vocation than he can as a fireman. If he suffers loss of bodily function, he suffers it regardless of what he does. The reduction of the orbit of his bodily activity because of the loss of a bodily function is the same regardless of vocation, but the effect of such loss in one vocation as compared to another may be enormously different. It seems too obvious to mention that a singer losing one finger would be little affected as compared to Paderewski losing a finger.

If we omit the word "bodily" and make the clause read "loss of function as an active fireman," we have the word "function" relating to the vocation of "active fireman." Here we have some difficulties, but by no means as great as when we try to give effect to both parts of the sentence. A 25 per cent loss of function "as an active fireman" would first take in all the functions of an active fireman, regardless of what particular duty an active fireman might be assigned to. Thus, an active fireman is supposedly one who can perform all the functions which an active fireman may be called on to do. If one active fireman should happen to be assigned to the telephone switchboard and another to keeping records, these men would be also capable, if active firemen, of climbing ladders, handling hose, running fire vehicles (at least, if so trained), and all the other manifold activities which active firemen are called to do in their

drills and in an actual fire and about the station when not on drill or fighting fires. After these are summed up from this as a base, the percentage of loss of these total activities is estimated. If only 25 per cent., he gets $20 a month. If less, he probably would get nothing under this interpretation. This does not mean that he would be good as a fireman. In fact, the statute seems to contemplate that before he gets any pension he must cease to work as a fireman. It may be that a man who suffers 5 per cent loss of function as an active fireman could not function at all as an active fireman, but would have to procure some other work. We know nought about that. The pension he would be entitled to under the suggested phraseology would be determined by comparing all the functions of an active fireman which he could *still* do in the manner of an active fireman (if he could do them but only slowly and laboriously, he would probably not be considered as being able to exercise that particular function), with all the functions that he or the ordinary active fireman could and is supposed to be able to perform.

We now consider the sentence leaving in the word "bodily" and omitting the words "as an active fireman." This brings the inquiry into determining simply his loss of bodily function as a man, just as is done under the next to the last paragraph of section 42-1-62, R. S. 1933. The doctors testify as to what his loss of bodily function is, regardless of his ability to work as an active fireman or in any other work. That is, testimony unrelated to vocational ability. It is the impairment of his normal bodily function caused by the accident. A very small impairment might leave him in shape to do many other things but not permit him to do the active work of a fireman. A slight limp or a slight impairment of the heart amounting to a 5 per cent impairment of bodily function might prevent him from running up ladders or standing on a wall, but not impair his ability to do most other work. As in the instant case, he had 5 per cent impairment of bodily function which put

him out of the running as a 100 per cent active fireman, if indeed the doctors were competent to testify as to his impairment as an active fireman.

Thus, if the words "an active fireman" are omitted, the award must be on the basis of loss of bodily function unrelated to his vocation as an active fireman or any vocation. Can the two parts of the sentence be united and make sense? We think they can. There may be a loss of bodily function which might not affect the work as a fireman. Thus, if a little toe or the lobe of an ear was lost, it might not affect his work as a fireman. Therefore, it must be loss of bodily function which would affect his work as a fireman. The first question, therefore, to be asked, in case the applicant desires to retire from active service, is: Is there a loss of bodily function? The second: If there is a loss of bodily function, does it affect his work as an active fireman? The third: If so, the commission must determine what percentage of all of the bodily functions employed in the work of an active fireman he has lost. He may have lost some bodily functions which as a pianist or a wrestler would impair him, but not perhaps as a fireman. If on inquiry it developed that his arm could not be raised upright but nearly so, or his fingers not spread quite so far apart as before the disability, or his foot would not flex quite as far as normally, but the full orbit was not needed in order to execute the bodily functions which a fireman must exercise in his duties as an active fireman, he would be entitled to no pension. If, on the other hand, he lost 25 per cent or more of those bodily functions which an active fireman exercises in his work as an active fireman, he would be entitled to a pension.

In the instant case the doctors rated him as to loss of function as a human and then as an active fireman. There is nothing to show that the doctors knew enough about the duties or functioning of an active fireman to rate his loss of such functions. Doctors may testify as to the amount of functional disability of a bodily member

of a human being. Doctors may also testify as to the amount of impairment a person would suffer in some of the ordinary and common activities of life such as climing ladders. But unless it is clear that they know what bodily activities or functions a vocation or a work embraces, they cannot testify as to the percentage of industrial or economic impairment consequent on the loss of certain physical functions. And they, of course, cannot testify as to the ultimate question as to whether an applicant is economically totally disabled. If it is so apparent from their testimony that he is so, then the commission can itself find such fact. Of course, doctors may be asked in view of their testimony of the bodily condition of a man whether it would be injurious or dangerous to his health to do a particular operation or set of operations provided they are informed, or it is clear that they are cognizant of the nature, kind, and extent of such activities. That is not answering in terms the ultimate question to be decided.

It appears that all parties think that this case should be returned for further evidence. It is accordingly remanded with instructions to determine, first, whether the loss of bodily function, if any, affects Price's ability as an active fireman. The commission, if it is not apprised from its own experience as to the duties of an active fireman, may take evidence on this. If the commission determines that the loss of bodily function affects his ability as an active fireman, it should then arrive at the percentage of such loss of those bodily functions used in work as an active fireman bear to the total bodily function employed by a normal active fireman in the work of such fireman.

The award is vacated—neither party to recover costs— and the case remanded to the Industrial Commission for further proceedings not inconsistent with the views expressed herein.

ELIAS HANSEN, C. J., and FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.