[No. 28494.   Department Two.   March 6, 1942.]

ELIZABETH F. METSKER, *Respondent*, v. THE MUTUAL
LIFE INSURANCE COMPANY OF NEW YORK,
*Appellant.*[1]

*Louis W. Dawson* and *Evans, McLaren & Lane,* for appellant.

*L. B. Sulgrove,* for respondent.

SIMPSON, J.—Plaintiff instituted this action to recover upon an insurance contract which provided monthly payments in the event of disability of the insured. The case, tried to a jury, resulted in a verdict for the plaintiff. Motions for judgment notwithstanding the verdict or for a new trial were presented by defendant and denied by the trial court. Thereafter judgment was entered upon the verdict and defendant appealed.

The assignments of error are in the admission of evidence and in the refusal to grant the motion for a new trial.

The facts are these:   During the year 1926, appellant

[1] Reported in 123 P. (2d) 347.

issued to respondent a twenty-year endowment policy in the amount of five thousand dollars. The policy contained a provision that the company would pay to the insured certain monthly payments if she should become totally and permanently disabled before reaching the age of sixty years. There was a further provision which waived premium payments in the event of disability.

The policy defined total and permanent disability as follows:

"Total disability.—Disability shall be considered total when there is any impairment of mind or body which continuously renders it impossible for the insured to follow a gainful occupation."

"Permanent Disability.—Total disability shall, during its continuance, be presumed to be permanent; (a) if such disability is the result of conditions which render it reasonably certain that such disability will continue during the remaining lifetime of the insured; or (b) if such disability has existed continuously for ninety days."

The only question for decision is, as stated by appellant: In a trial where the only issue before the jury is whether or not an insured is totally and permanently disabled within the terms of an insurance contract, is it proper for the trial court to permit a doctor to answer over objection a question asking his opinion as to whether the insured could engage in any gainful occupation after he has testified in detail to the symptoms and physical and mental condition of the insured in a manner clearly stating the extent of the insured's disability?

In order to prove total and permanent disability, respondent called Drs. A. H. Buis and W. D. Read.

Dr. Buis testified that he had treated respondent since August, 1938. He stated that her symptoms were gen-

eral tiredness, manifested in the morning on arising, mental sluggishness, poor memory, pains in her chest, swelling of her knees and feet, menstrual disturbance, and abnormal sleepiness. His physical examination revealed that she had low blood pressure, which resulted in an anemic condition; that her skin and hair were exceedingly dry and coarse; and that she had swelling around her ankles and eyes, which is called edema. He prescribed the taking of thyroid extract as the only treatment approved by the medical profession for people lacking in secretions of the thyroid gland. He further stated that the insured was among the small percentage of people who are affected with myxedema and who do not completely respond by taking the thyroid extract.

Other testimony of Dr. Buis was as follows:

"Q. What if any change in the symptoms have you been able to make during your treatment? A. We have been able to control the edema or swelling of the tissues, the enemia, blood pressure, and to a certain extent the general tiredness and sleepiness, but not completely, and also we have been able to control the menstrual disturbance. Q. What have you not been able to control? A. We have not been able to control her mental sluggishness entirely, her general tiredness and lassitude. Q. What has been her general manner as to being vigorous? A. She is slow, not vigorous; she is hesitating in her actions. Q. Have you had occasion to determine how her memory is? A. In asking questions at different times as we do in certain cases she has been hesitating and she cannot always get the full memory of things that have been asked. The thing that stands out is that she begins to answer and then stops and hesitates before answering. And that is characteristic; they must think; that is one thing that is pointed out by the outstanding authority. . . . Q. In her case, what effect does work or walking or any exercise have? A. The only bad effect would be that she might become fatigued sooner than a normal individual. Q. She does have a constant sleepiness and tiredness? A.

Yes, sir. Q. Have her symptoms of pain continued during the time you have known her? A. Yes, sir; with very little relief. . . . Q. Can you give us a little detail of the dosage you have prescribed and the effect if you increase it? A. The best we have found is four grains a day; above that we cannot but develop toxic symptoms. Q. Suppose you raise it and continue to raise it, what would be the effect? A. We have tried that and when we raise and begin to get the toxic symptoms we get a pulse of 120 or 130; there occurred a strain on the heart muscle and pain in the chest and more nervousness, and the patient begins to go down instead of up and then we begin to have a case of goiter."

"Q. Now this plaintiff is educated to the extent probably and has such an education as a nurse would have. Is she able to follow any gainful occupation which you can conceive of? MR. LANE: This is objected to on the ground that the witness is not qualified and calling for a conclusion, and is a question for the jury. THE COURT: From a medical standpoint I think he is entitled to give an answer. MR. SULGROVE: However, I will reform my question. Q. Can you conceive of any type of gainful work that this woman can be employed in? MR. LANE: Same objection, not qualified on certain matters. THE COURT: Objection overruled; exception allowed. A. In my line, as I say, and profession, and as she is a nurse, I would not employ her to take care of any of you or your children. Q. Well, outside of nursing, what other occupation can you conceive of that she could possibly do? MR. LANE: Same objection, witness not qualified, and calling for a conclusion. THE COURT: Same ruling; exception allowed. A. She might sell shoestrings; other than that I do not know of any work. Q. On what do you base that, chiefly? A. Both on her physical and mental condition."

The testimony of Dr. Read concerning respondent's physical and mental condition was similar to that given by Dr. Buis. During the course of Dr. Read's examination, the following occurred:

"Q. From your examination and from your knowledge of her condition is there any type of labor that she might do at which she might be employed at a gainful occupation? MR. LANE: That is objected to as the witness is not qualified, and calls for a conclusion. THE COURT: Objection noted; overruled; exception allowed. A. Not in my opinion."

There is a marked conflict of authority upon the question presented in this case.

Appellant cites *Johnson v. Caughren,* 55 Wash. 125, 104 Pac. 170; *Hill v. Great Northern Life Ins. Co.,* 186 Wash. 167, 57 P. (2d) 405; *Thomas v. Inland Motor Freight,* 190 Wash. 428, 68 P. (2d) 603; and *Warren v. Hynes,* 4 Wn. (2d) 128, 102 P. (2d) 691, as indicative of the rule in this state.

In the first case, the witnesses who were allowed to state their conclusions were fellow servants and not physicians, as were the doctors who testified in the instant case. The case is of no assistance because of that fact. A different rule should be applied when considering the opinion of experts.

In the second case, we stated the general rule as follows:

"There are, generally, two classes of cases in which expert testimony as to the facts is admissible. In one class, the facts are to be stated by expert witnesses, but the conclusions therefrom are to be drawn by the jury. In the other class, the expert witnesses not only state the facts, but also give their conclusions in the form of opinions, which the jury may either accept or reject. The first class comprises those instances where the existence of particular facts is not of common knowledge, but is peculiarly within the knowledge of men whose experience or study enables them to speak with authority. If, with such facts before it, the jury is able to form a conclusion therefrom, it is the sole province of the jury to do so. The other class comprises those cases where not only the knowledge of the facts, but also the conclusions to be drawn therefrom, depend on pro-

fessional and scientific knowledge or skill. In such cases, qualified experts may testify both as to the facts and as to the conclusions. 11 R. C. L. 573."

The facts and questions presented in the last two cases and the facts and questions in the case at bar render those cases of no value in solving the problem presented here.

Another statement of the rule is contained in the following quotation from 29 Am. Jur. 1122, Insurance, § 1499:

"Generally, in actions involving issues as to the effect of an ailment or injury, the probable continuance and the future course of an existing injury or disability, and the duration and permanency of, or reasonable probability of recovery from, injuries or disease, a duly qualified physician may give opinion testimony. Clearly, therefore, in actions to enforce claims under disability provisions of insurance policies, expert opinion testimony of a physician who is shown to be duly qualified on the issue of the disability of the insured, especially if such testimony involves something less than opinion as to the ultimate fact of disability which is at issue, is admissible. Thus, a physician's testimony as to the effect which an injury to some member of the body, such as the arm, leg, etc., will have upon the insured person's ability to use that particular member in gainful employment in the future is admissible upon the ultimate question of total and permanent disability. Many courts, however, hold or assume that an expert witness cannot be permitted to give his opinion upon the precise or ultimate facts in issue before the jury, which must be determined by them. This view has been applied in a number of Federal cases involving actions for disability benefits under policies of war risk insurance. The modern tendency, however, is to permit expert witnesses to state facts known to them, because of their expert knowledge, even though their statements may involve the ultimate fact to be determined by the jury; . . ."

As indicated by the following cases, the Federal courts and a few state courts have held to the strict rule which prohibits the giving of conclusions by a physician when testifying concerning an individual's ability to pursue a gainful occupation. *United States v. Spaulding*, 293 U. S. 498, 79 L. Ed. 617, 55 S. Ct. 273; *Harris v. United States*, 70 F. (2d) 889; *United States v. Stephens*, 73 F. (2d) 695; *United States v. Provost*, 75 F. (2d) 190; *Rackoff v. United States*, 78 F. (2d) 671; *United States v. Sampson*, 79 F. (2d) 131; *McConnell v. United States*, 81 F. (2d) 639; but compare *Runkle v. United States*, 42 F. (2d) 804; *Home Life Ins. Co. v. Swaim*, 200 Ark. 819, 142 S. W. (2d) 209; and *Price v. Industrial Commission of Utah*, 91 Utah 152, 63 P. (2d) 592.

The great majority of state courts, in actions involving insurance policies providing for disability benefits, uphold the liberal rule that expert evidence is admissible on the ultimate question of whether the claimant has incurred the disability insured against.

The reason for the rule which allows physicians to give their conclusions is well stated in *Cody v. John Hancock Mutual Life Ins. Co.*, 111 W. Va. 518, 163 S. E. 4, 86 A. L. R. 354. In that case, plaintiff sued on a total disability clause contained in a life insurance policy. During the trial, two physicians were permitted to give their opinion relative to the ability of the insured to engage in occupations for compensation or profit. In speaking upon the admissibility of the physician's testimony, the West Virginia court of appeals stated:

"It is urged that this expression of opinion by the physicians was an invasion of the province of the jury. We cannot share that view. The plaintiff was suffering from toxemia. Obviously, that is not a matter about which laymen are advised. It was therefore proper not only for the physicians to testify as to the nature

of the disease but as to its effect on the patient during their period of observation. In dealing with such matters it would be extremely difficult, if not impossible, for physicians to make clear to the jury just the characteristics of the disease and its effects. If the patient had been suffering from a broken leg the situation would be different; the nature of the injury and the resultant incapacity of the patient to perform gainful duties would have been obvious."

Another good statement underlying the purpose for the rule was expressed in *Cooper v. Metropolitan Life Ins. Co.*, 323 Pa. 295, 186 Atl. 125, 111 A. L. R. 598:

"It is common knowledge that there are many ailments which laymen might not consider wholly or even partially incapacitating, but for which a physician would immediately insist upon partial or total inactivity and rest. The evidence shows that mere description of the knee injury would not sufficiently inform a lay jury to consider and determine intelligently the questions at issue. It therefore became necessary to enlighten the jury by the opinions of the physicians who had treated and operated on the plaintiff, or were otherwise qualified by experience and observation."

Finally, in *O'Kelley v. Mutual Life Ins. Co. of New York*, 197 S. C. 109, 14 S. E. (2d) 582, a situation similar to the case at bar, the court phrased the question as follows:

"The other question presented by the appeal is whether the court erred in permitting respondent's [insured's] doctors to testify over the objection of appellant, after detailing their diagnoses, that in their opinion the insured is totally disabled. Appellant strongly argues that such testimony is of the ultimate fact in controversy, is to a conclusion that can be reached only by the jury and is, therefore incompetent; . . . "

In deciding the question, this was said:

"In this instance the witnesses were physicians who had testified to their qualifications of education and

experience and we think their opinions that the respondent was totally disabled by the diseases which they had diagnosed and to which they testified were competent. The function of the jury is not interfered with by this testimony; on the contrary, it is an aid for it is admitted only when it is upon a subject more familiar to the expert witnesses than to the laymen, constituting the jury."

Among other authorities lending support to the rule announced in the foregoing cases, we note the following: *Isaac Benesch & Sons v. Ferkler*, 153 Md. 680, 139 Atl. 557; *Becker v. Prudential Ins. Co. of America*, 124 Pa. Super. 138, 188 Atl. 400; *Travelers Ins. Co. v. Needle*, 171 Md. 517, 189 Atl. 216; *Texas Employers' Ins. Ass'n v. Shilling*, 259 S. W. (Tex. Civ. App.) 236; *Bankers Lloyds v. Montgomery*, 42 S. W. (2d) (Tex. Civ. App.) 285; *Horn's Administrator v. Prudential Ins. Co. of America*, 252 Ky. 137, 65 S. W. (2d) 1017; *Coleman Mutual Aid Ass'n v. Muse*, 67 S. W. (2d) (Tex. Civ. App.) 393; *Metropolitan Life Ins. Co. v. Greene*, 93 S. W. (2d) (Tex. Civ. App.) 1241; *Brotherhood of Locomotive Firemen & Enginemen v. Raney*, 101 S. W. (2d) (Tex. Civ. App.) 863; *Hummer v. Midland Cas. Co.*, 181 Mich. 386, 148 N. W. 413; *Equitable Life Assur. Society of the United States v. Davis*, 231 Ala. 261, 164 So. 86; *DeVore v. Mutual Life Ins. Co. of New York*, 103 Mont. 599, 64 P. (2d) 1071; *Lemarr v. Metropolitan Life Ins. Co.*, 24 Tenn. App. 294, 143 S. W. (2d) 891.

See, also, 29 Am. Jur. 1122, § 1499. An annotation on this question will be found in 111 A. L. R. 603.

In view of our decision in *Hill v. Great Northern Life Ins. Co.*, supra, which announces the general rule, and the state decisions cited, we prefer to follow the more liberal rule and hold that physicians testifying as experts in cases of this nature may give their con-

clusions as to whether or not the insured is able to follow a gainful work or occupation.

The rule which we adopt has a special need in situations of this kind. The disability of respondent was caused from an abnormal secretion of the thyroid gland, a disturbance almost wholly unknown to laymen of whom the jury was composed. The members of the jury were required to learn from the various witnesses the location and functions of the gland, the degree and extent of its impairment, and whether one so stricken was totally and permanently disabled within the meaning of the definition of that term as contained in the policy of insurance. The doctors were the only ones capable of testifying to these facts. They were properly allowed to testify whether their patient was able to follow a gainful occupation without substantial injury. The question presented to the jury involved a disability resulting from impairment of an internal organ, and the physicians, learned in their profession, were the chief source from whom it could secure help or information.

The judgment is affirmed.

ROBINSON, C. J., BEALS, BLAKE, and JEFFERS, JJ., concur.