[No. 32222. Department Two. August 13, 1953.]

OSCAR OLSON, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.[1]

*Walthew, Gershon, Oseran & Warner*, for appellant.

*The Attorney General* and *Bernard A. Johnson, Assistant*, for respondent.

[1] Reported in 260 P. (2d) 313.

SCHWELLENBACH, J.—February 1, 1940, while in the employ of Northwestern Logging Company in Grays Harbor county, Oscar Olson suffered an industrial injury. March 1, 1940, he filed a claim with the department of labor and industries. The claim was allowed and was closed August 28, 1940, allowing time loss but no permanent partial disability award. Thereafter, the department, on claimant's request, reconsidered his claim and on November 19, 1940, determined that his claim should remain closed. June 15, 1943, claimant filed application to reopen for aggravation. This was denied by the department on July 20, 1943. July 28, 1943, he appealed to the joint board for rehearing. February 3, 1944, the joint board sustained the order of the supervisor. Thereafter claimant appealed to the superior court for Grays Harbor county, and on February 27, 1948, a judgment was entered by the superior court awarding him 40% of the maximum for unspecified injuries and 25% of the amputation value of the left leg at the hip.

March 31, 1948, the department, pursuant to the above-mentioned judgment, reopened the claim for payment of the above specified awards. April 23, 1948, claimant again applied to reopen for aggravation, which application was denied by the department on August 2, 1948. Thereafter, an appeal was taken to the joint board, which, on September 20, 1948, refused to grant a rehearing. Claimant then appealed to the superior court, and on December 3, 1949, the court entered a judgment ordering the board to grant a rehearing. January 25, 1950, the board of industrial insurance appeals (successor to the joint board) issued an order allowing a rehearing on claimant's application to reopen for aggravation. The hearing before the board of industrial appeals was held at Aberdeen, October 10, 1950. *At that hearing, it was stipulated that the aggravation period to be considered was between December 16, 1943, and April 23, 1948.* After a hearing, the board denied claimant's application.

Claimant appealed to the superior court for Grays Harbor county, and the appeal was heard by a jury October 25, 1951. At the trial, the record of the proceedings before the

board was read to the jury. No objections which were raised before the board were renewed at the trial. The jury found aggravation between the dates of December 16, 1943, and April 23, 1948, and also found that claimant became totally and permanently disabled between those dates. The trial court denied a motion for new trial, but granted motion for judgment notwithstanding the verdict, on the ground that he felt that there was no evidence or reasonable inference therefrom to justify the verdict of the jury. This appeal follows.

Mr. Olson testified that between the terminal dates his physical condition was "getting worser every year"; that he had to sell his cows; that he couldn't work in the field; that in 1943, he could lift sacks, but later was compelled to roll them; that in 1943, his left hip was hurting; that the pain ran down his left leg; that sometimes he had to kneel on his right knee in order to saw; that in 1943, he worked for one Walter Turnquist for a couple of months, but quit because the pain was so bad; that he had not worked since.

Dr. Arvid E. Anderson examined Olson October 6, 1950, four days before the hearing. This was the only time that he examined appellant. He testified that appellant's right leg was normal, but that the gracilis muscle in the left leg was tight and in apparent spasm; that this was apparently caused by the pain along the hip joint; that the left leg measured 37⅜ inches, and the right leg, 38 inches. He found a scoliosis, probably due to the limp, and a favoring of the left leg and hip. He explained that the scoliosis had been a gradual development resulting from the limp on the left side. In answer to a hypothetical question, Dr. Anderson testified that in his opinion Olson's condition had become aggravated between December, 1943, and April, 1948; that the change had occurred in the hip joint, thereby causing muscle spasms. He based his testimony on his personal examination and an examination of X rays which were made in 1943.

Under cross-examination he testified:

"Q. Doctor, are you able to tell us what this man's condition was on December 16, 1943? A. The answer to that ques-

tion—may I ask when these pictures were taken? Q. December 16, 1943, other than what you have testified to from the Exhibits 8 and 9, the x-ray exhibits, do you know anything about the man's condition other than that personally? A. Other than that, no. Q. What was the man's condition on April 23, 1948. Do you know? A. No, I do not. . . . Q. Actually regarding whether the man's condition had become aggravated between December 16, 1943, and April 23, 1948. You stated you had to assume the man had no muscle spasm in '43 and you found that in 1950, so my question is that actually you were comparing what you thought his condition was in 1943 with what you found on October 6, 1950, the date of your examination? A. Yes. . . . Q. You are not able to testify, Doctor, to any physiological changes between December, '43, and April, '48? A. No, I am not. Q. Do you know, Doctor, the cause of kyphosis in this case which you found on October 6 of 1950? A. Do I know the cause? Q. Yes. A. I believe it's due to chronic arthritis. Q. Do you know the cause of the chronic arthritis? A. No, I do not."

Under redirect he testified that he thought the arthritis, as shown in the X rays of 1943, would gradually become worse.

Dr. O. R. Austin, of Aberdeen, testified that he examined appellant November 6, 1940, June 28, 1943, December 16, 1943, and July 24, 1948. He testified that the examination of December 16, 1943, showed that Olson could not bend as far to the left as to the right; that the voluntary raising of the right leg was to 80 degrees, the left to 45 degrees; that the rotary motions of the left hip joint were restricted in all directions; that he walked with a slight limp to the left. As to his examination in 1948, he testified that he could not form an opinion as to whether his condition had become worse beween December 16, 1943, and July 24, 1948, based only on his findings made in those two examinations; that he had X rays in 1943, and none in 1948; that the muscles had softened somewhat, but that that could have been from lack of work; that the change was not due to the injury, but to disuse. Under cross-examination, he testified that in his 1943 examination he had found a limitation of motion in

the left hip area, and that in 1948 he had found it to be approximately the same.

A trial court may not grant a motion for judgment notwithstanding the verdict if there is any evidence or a reasonable inference from evidence to sustain the verdict. *Scobba v. Seattle*, 31 Wn. (2d) 685, 198 P. (2d) 805.

An injured workman seeking compensation for aggravation of injury has the burden of showing aggravation of his condition by medical testimony. *Kleven v. Department of Labor & Industries*, 40 Wn. (2d) 415, 243 P. (2d) 488. In that case, in affirming a judgment granting a nonsuit, we said:

"The only medical testimony on appellant's behalf was introduced at the joint board hearing, on April 12, 1946, at which time the appellant also testified on his own behalf. Dr. Segal had examined appellant two days previous to the hearing for the purpose of qualifying himself as a witness. He testified as to appellant's condition at the time of the examination. Over objection, he rated appellant's disability at seventy-five per cent of the value of the hand amputated at the wrist. His testimony did not propose to show aggravation of the original injury, other than an inference from his statement that he found some atrophy which had occurred at some time. Nothing was said as to what period of time he meant, nor was any medical testimony, of any kind, offered or received purporting to cover the period in issue, that is to say, between the terminal dates in question."

Considering the testimony in this case, and without further discussion of it, we are convinced that there was no showing by medical testimony of aggravation of appellant's condition between December 16, 1943, and April 23, 1948. We are also convinced that the trial court was correct in finding that there was no evidence or reasonable inference therefrom to justify the verdict of the jury.

The judgment is affirmed.

GRADY, C. J., HAMLEY, DONWORTH, and FINLEY, JJ., concur.