[No. 32843. Department Two. January 6, 1955.]

GEORGE E. HYDE, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*[1]

*F. W. Loomis,* for appellant.

*The Attorney General* and *Harold J. Hunsaker, Assistant,* for respondent.

DONWORTH, J.—This is an appeal from a judgment of dismissal entered by the superior court after granting re-

[1]Reported in 278 P. (2d) 390.

spondent's motion that appellant's appeal thereto from the decision of the board of industrial insurance appeals be dismissed because of the insufficiency of appellant's evidence to overcome the statutory presumption of the correctness of the board's decision. That decision sustained an order of the supervisor of industrial insurance entered June 2, 1949, by which appellant was awarded fifty per cent of the amputation value of the major arm at or above the elbow (less $107.50 previously allowed for a broken finger) and time loss.

In appellant's brief, he discusses together his three assignments of error:

"The Trial Court erred: (1) in weighing the evidence, in trying the case *de novo,* and in disregarding the requirements for a judgment of dismissal; (2) in sustaining the motion for dismissal; (3) in granting the judgment for the defendant."

The industrial accident which caused appellant's injuries occurred on February 2, 1948, when he was struck by a large timber while working in a sawmill. The impact of the blow caused him to fall and fracture his right wrist. On May 18, 1949, he was examined by Dr. I. R. Watkins for the department of labor and industries. His claim was closed by the supervisor on June 2, 1949, with the allowance above stated.

Appellant then appealed to the board of industrial insurance appeals. Testimony was taken before an examiner on October 10, 1951, and on March 13, 1952. The testimony of appellant's medical expert, Dr. J. Harold Brown, was given by deposition. Its evaluation is the determining factor in this case. The board filed its decision sustaining the supervisor's order on June 23, 1953.

On appeal to the superior court, the trial judge, after hearing the arguments of counsel in support of, and in opposition to, respondent's motion to dismiss the appeal, rendered an oral decision as follows:

"The difficulty with this case, as I see it, is that the doctor didn't examine this man, that is, the claimant's doctor didn't examine the man until twenty-eight months after the date

of the closing order. I think the weakness in the record is the doctor's answer on page 71, which I am afraid is double talk. He examined the man twenty-eight months after the closing order, about two and a half years after the man was injured. It is true he saw him on only one occasion, that he examined him for the purpose of qualifying himself as a witness. It is true he had some x-rays and some objective findings. Then he is asked as to the rating, and frankly, this answer, page 71, lines 16 to 27, I find very confusing, and I quote:

" 'A. I would state that the atrophy and the disability that has developed since 1949 has increased undoubtedly since the Supervisor's order. However the disability must have been obvious on that date it is my opinion, and the situation would be in effect on the basis of my examination on October 8, 1951. Q. (By Mr. Loomis) You mean that such a rating would be proper on the date of the Supervisor's closing. A. On the date of the Supervisor's closing.'

"Mr. Loomis, he testified that he had rated the man at 65% loss of the arm and 20% unspecified for the neck. As I read that testimony, that is at the time of the examination. Then you asked him whether that was the rating on the date of the supervisor's order. Then he hedges a little and says there is an increase of disability in the meantime.

"I am going to dismiss the appeal, Mr. Loomis. I don't like to do it. I have read the record through several times. On the whole, so much of the claimant's testimony relates to his condition in 1950, and the doctor's examination is twenty-eight months after the closing order, and he refers, in that critical answer, to some aggravation. It may be that this man has a much better aggravation case than an appeal from the closing order.

"The appeal will be dismissed."

The basis of the trial court's ruling in sustaining the challenge to the sufficiency of the appellant's evidence was that there was neither evidence nor reasonable inference from the evidence which would justify submitting the case to the jury. *Olson v. Department of Labor & Industries,* 43 Wn. (2d) 85, 260 P. (2d) 313.

It should be noted that this case does not involve any claim of aggravation but the issue before the board of industrial insurance appeals was solely whether the super-

visor was correct in fixing appellant's permanent partial disability on June 2, 1949, at fifty per cent of the amputation value of the major arm at or above the elbow.

On this appeal, appellant contends that his medical evidence was sufficient to prove that his physical condition was much worse on June 2, 1949 (the date his claim was closed) than the doctor for the department believed it to be, and that consequently he was entitled (on the date the claim was closed) to a much greater disability award than he was allowed by the supervisor.

■ We have held in aggravation cases, and also in appeals from orders closing claims with a lesser award than that sought by a claimant, that the issue is the correctness of the order of the supervisor of industrial insurance *on the date it was issued. Karniss v. Department of Labor & Industries,* 39 Wn. (2d) 898, 239 P. (2d) 555; *Kleven v. Department of Labor & Industries,* 40 Wn. (2d) 415, 243 P. (2d) 488; *Turner v. Department of Labor & Industries,* 41 Wn. (2d) 739, 251 P. (2d) 883; *Gillmer v. Department of Labor & Industries,* 42 Wn. (2d) 387, 255 P. (2d) 899; *Olson v. Department of Labor & Industries,* 43 Wn. (2d) 85, 260 P. (2d) 313; *Moses v. Department of Labor & Industries,* 44 Wn. (2d) 511, 268 P. (2d) 665; *Johnson v. Department of Labor & Industries,* 45 Wn. (2d) 71, 273 P. (2d) 510.

■ In order to establish that the supervisor's order was incorrect on the date it was issued, a claimant must prove by expert medical testimony, some of it based upon *objective symptoms which existed on or prior to the closing date,* that his rate of disability on the date of the closing order was greater than the supervisor found it to be. *Moses v. Department of Labor & Industries, supra,* and cases cited therein. To prove the *existence* of such objective symptoms, a claimant is required to produce medical evidence that the objective symptoms either (1) had been discovered by a medical expert who mentally noted or physically recorded such symptoms *on or prior to the closing date* or within a reasonable time thereafter, or (2) that the objec-

tive symptoms (such as a broken bone or an arthritic condition) had left their own record in or on the claimant's body *on or prior to the closing date. Wissink v. Department of Labor & Industries,* 40 Wn. (2d) 672, 245 P. (2d) 1006; *Kresoya v. Department of Labor & Industries,* 40 Wn. (2d) 40, 240 P. (2d) 257.

Appellant in the case at bar produced not a single bit of medical evidence concerning objective symptoms which *existed* on or prior to the date of the supervisor's closing order. Dr. Brown did produce some X-ray photographs, but they were taken by him on October 8, 1951, when he examined appellant for the first time. This examination was made twenty-eight months after the claim was closed.

Dr. Brown, testifying for appellant, stated that, in his opinion, appellant's physical condition on October 8, 1951, twenty-eight months after the closing order was issued, was worse (aggravated) than it had been on June 2, 1949, the date of the closing order. Nevertheless, the doctor expressed the opinion that appellant's aggravated physical condition (as found on October 8, 1951) *existed on June 2, 1949,* and that consequently the supervisor should have awarded appellant a greater disability rating than he did on that earlier date. There was absolutely no medical evidence of an objective nature in the record on which the doctor could base his opinion that appellant was entitled to a greater disability rating in 1949 than he was awarded. As the trial court indicated in its oral decision, such verbal gymnastics afford no logical basis from which a jury could conclude that the supervisor's closing order of June 2, 1949, was incorrect on the date it was issued.

Considering the medical evidence in this case, and without further discussion of it, we are convinced that there was no showing by any competent medical evidence that appellant's physical condition was worse than that found by the department's doctor, nor that his rating of disability was greater on the date of the supervisor's closing order than the award he received. Therefore, the trial court was correct in ruling that there was no evidence nor reasonable

inference from evidence sufficient to justify submitting the case to a jury.

The judgment of dismissal is affirmed.

GRADY, C. J., SCHWELLENBACH, HILL, and WEAVER, JJ., concur.

February 9, 1955. Petition for rehearing denied.