[No. 32986. Department Two. April 1, 1955.]

RUSSELL K. HARPER, *Respondent*, v. THE DEPARTMENT OF
LABOR AND INDUSTRIES, *Appellant*.[1]

*The Attorney General* and *Haydn H. Hilling, Assistant,*
for appellant.

*Walthew, Oseran & Warner,* for respondent.

HILL, J.—The trial court, on an appeal from the board
of industrial insurance appeals by the claimant, Russell K.
Harper, made the following finding:

"That the claimant's disability at the time the Supervisor
last closed the claim on or about August 21, 1950, was, in
fact, 40% of the maximum for unspecified permanent partial
disabilities."

The supervisor of industrial insurance had last closed the
claim on August 21, 1950, with an award of twenty per cent
of the maximum for unspecified permanent partial disability,

[1]Reported in 281 P. (2d) 859.

which action by the supervisor had been approved by the board of industrial insurance appeals.

Based on the quoted finding, the trial court entered its order directing the department of labor and industries to award the claimant forty per cent of the maximum for unspecified permanent partial disability. The department appeals, contending that there was no medical testimony directed to the relevant date, *i.e.*, August 21, 1950, that would support a finding of any percentage of disability in excess of that found by the supervisor.

The claimant had sustained an injury July 26, 1949, falling some eight feet from a truck and landing on his head. An X ray taken that day disclosed, to quote Dr. J. E. Jackson, the claimant's only medical expert,

". . . a remarkable amount of osteoarthritis of all of the seven vertebrae making up the cervical spine. There is a great amount of lipping of the bodies of the vertebrae, and the intervertebral spaces are narrowed. The space between the fifth and fourth cervical vertebrae is markedly narrowed. The bodies are lipped, almost appearing deformed."

Dr. E. A. LeCocq, a witness for the department, testified that the X ray of July 26, 1949, showed a marked arthritic condition, and it "wasn't moderate." He testified further that films taken by him on April 13, 1950, showed an increase in the arthritic condition over the X ray of July 26, 1949, and that his films "show a terrific amount of arthritis about the 4th, 5th, 6th, and 7th vertebral bodies with marked narrowing of the intervertebral discs."

It is well established that an injury may light up a dormant or quiescent arthritic condition, and that, if the injury is covered by our workmen's compensation act, the injured workman may recover for the full extent of the disability occasioned by the arthritis so lighted up. *Pulver v. Department of Labor & Industries* (1936), 185 Wash. 664, 56 P. (2d) 701, and cases there cited. See, also, *Jacobson v. Department of Labor & Industries* (1950), 37 Wn. (2d) 444, 224 P. (2d) 338, and cases there cited.

The present case makes clear that, even though the X ray

discloses a marked arthritic condition, it does not, of itself, establish a disabling condition. Despite the presence of a "remarkable amount" of osteoarthritis, as shown by the X ray of July 26, 1949, which Dr. J. E. Jackson would have expected to be almost totally disabling, the claimant had, prior to his injury on that date, experienced no difficulty, discomfort, or disability.

The claimant had some difficulty in determining the theory of his appeal to the board of industrial insurance appeals. In the face of the fact that he was steadily employed at the time his claim was closed, and for a substantial period thereafter, it was argued vigorously on his behalf that he was entitled to a pension on the basis that he was totally and permanently disabled at that time. See *Turner v. Department of Labor & Industries* (1953), 41 Wn. (2d) 739, 251 P. (2d) 883. He also clung tenaciously to the theory of aggravation subsequent to the date his claim was closed, but that contention was ultimately abandoned, and at the superior court level the only issue presented was the extent of his disability at the time of the closing of the claim. The claimant had been examined by two doctors prior to the date on which the supervisor "last closed" the claim, *i.e.*, by Dr. E. A. LeCocq on April 13 and July 7, 1950, and by Dr. S. N. Berens on July 24, 1950; and on the basis of their rating, the claim was closed by the supervisor with an award of twenty per cent of the maximum for unspecified permanent partial disability. Our concern in this case is to determine what, if any, evidence there is to support the trial court's finding that the award should be forty per cent instead of twenty per cent of the maximum for unspecified permanent partial disability.

It is conceded that there was an injury within the coverage of the workmen's compensation act, and that there was a serious pre-existing arthritic condition.

Recognizing that an award for disability caused by the lighting up of such an arthritic condition by such an injury can be made because such disability is attributable to the injury, it is clear that the extent of that disability, as it exists at any relevant date, must be determined by medical

testimony, some of it based upon objective symptoms. *Hyde v. Department of Labor & Industries* (1955), *ante* p. 31, 278 P. (2d) 390, and cases therein cited. See, also, *Wissink v. Department of Labor & Industries* (1952), 40 Wn. (2d) 672, 245 P. (2d) 1006.

█ Dr. J. E. Jackson testified that, as a result of the examination he made of the claimant November 23, 1951 (and he made no other), and of X rays of July 26, 1949, August 3, 1951, and September 3, 1951, taken from the departmental files, "the disability should be maximum for the permanent partial disability for unspecified injuries, including the neck and the shoulder." It is clear that he was testifying as of the date of his examination, November 23, 1951. Asked if he had any way to estimate what claimant's condition was on June 12, 1950, his answer was, "No. That would be rather difficult." This is as close as the claimant's medical testimony came to the relevant date of August 21, 1950. It is clear that there was no medical testimony which established, or from which it could be inferred, that the supervisor's award of twenty per cent of the maximum for unspecified permanent partial disability on August 21, 1950, was erroneous, or which would support the trial court's finding of forty per cent on that date.

Some complaint is made of the requirement in cases of this character that the claimant's medical testimony regarding disability be tied to the relevant date, *i.e.*, the date of the supervisor's closing order. We see no hardship in such a requirement. If a claimant is going to appeal from an order of the supervisor, he must appeal within sixty days from the date notice of that order is communicated to him, and that is customarily within a day or two of the date of the order. We have here no suggestion of any prejudicial delay in notifying the claimant of the order of August 21, 1950, and his notice of appeal therefrom was verified on August 24, 1950.

The judgment is reversed, with directions to enter a judgment of dismissal.

HAMLEY, C. J., MALLERY, WEAVER, and ROSELLINI, JJ., concur.