480

[No. 13490–6–I.   Division One.   April 21, 1986.]

GEORGE D. EDWARDS, *Appellant*, v. THE DEPARTMENT
OF LABOR AND INDUSTRIES, *Respondent*.

*Small & Winther* and *Gregory F. Logue,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Beverly Norwood Goetz, Assistant,* for respondent.

SCHOLFIELD, C.J.—George D. Edwards assigns error to the trial court's dismissal of his appeal from an order of the Board of Industrial Insurance Appeals which affirmed the disability award of the supervisor of industrial insurance. We reverse.

FACTS

In 1971, Edwards suffered a heart attack while working as a lineman for Metropolitan Electric, Inc. He filed an industrial injury claim with the Department of Labor and

Industries. The supervisor of industrial insurance eventually closed the claim on August 27, 1979, with an award of 15 percent partial permanent disability. Edwards appealed to the Board of Industrial Insurance Appeals, claiming that he was permanently disabled. The Board held a hearing on the merits.

Edwards has not worked since his heart attack in 1971. He has a variety of unrelated injuries and diseases as well. Since 1956, he has suffered from nondisabling asthma and has had a peptic ulcer. He began to experience lower back problems in 1973 and had a successful laminectomy in 1975. He also had surgery in 1976 to repair a knee injury. Edwards has a condition called tremulousness, manifested by a constant rotary head nod. In addition, he has been diagnosed as having arteriosclerosis. The principal disagreement between the experts testifying before the Board on behalf of each party was the degree of disability caused by Edwards' various preexisting and subsequent ailments vis-a-vis the 1971 heart attack.

Doctors Levenson and McDonough, both cardiologists, examined Edwards at the Department's request before his claim was closed in 1979. Both doctors concluded that Edwards' heart condition was not disabling, and testified before the Board that the supervisor's 15 percent award was adequate compensation for the 1971 heart attack. Dr. Levenson testified that when he examined Edwards in 1977, he thought that his condition was fixed and stable. Dr. McDonough examined Edwards first in 1977 and again about 1 month before the claim was closed in 1979. He testified that Edwards' condition had not changed between the first and second examinations.

Dr. Fisher, an expert in internal medicine, examined Edwards 9 months after the Department closed the claim. Dr. Fisher told the Board that, as a result of the 1971 heart attack, Edwards was now totally disabled with regard to any employment of a physical nature. Dr. Fisher also testified that Edwards' condition was fixed and stable. Dr. Fisher did not, however, directly address his testimony to

Edwards' condition on or about August 27, 1979, the claim's closing date.

The Board affirmed the supervisor's award, and Edwards appealed the Board's decision to the Superior Court, demanding a jury trial pursuant to RCW 51.52.115. The Department successfully moved to dismiss the appeal on the ground that the evidence presented at the hearing before the Board was legally insufficient to establish a prima facie case from which a jury could find that Edwards was suffering from a disability greater than that found by the supervisor.

### STANDARD OF REVIEW

In appeals from orders closing industrial insurance claims, the issue before the Board is the correctness of the supervisor's order *"on the date it was issued"*. (Italics ours.) *Hyde v. Department of Labor & Indus.*, 46 Wn.2d 31, 34, 278 P.2d 390 (1955); *Turner v. Department of Labor & Indus.*, 41 Wn.2d 739, 742, 251 P.2d 883 (1953). The issue before the trial court, in turn, is whether the supervisor's order, as modified by the Board, is correct. Both the Board and the superior court exercise appellate jurisdiction only. *Turner*, at 742.

To establish that the supervisor's order was incorrect on the date it was issued, the claimant must prove by expert medical testimony, "some of it based upon *objective symptoms which existed on or prior to the closing date,*" that his disability on the date of the closing order was greater than that found by the supervisor. *Hyde v. Department of Labor & Indus., supra* at 34.

The Department of Labor and Industries maintains that, since Dr. Fisher examined Edwards after his claim was closed and did not specifically address his testimony at the hearing to Edwards' condition on the closing date, his opinion is not probative as to the correctness of the supervisor's award on the date it was issued. The Department relies upon a number of Washington Supreme Court cases including *Roberts v. Department of Labor & Indus.*, 46

Wn.2d 424, 282 P.2d 290 (1955) and *Harper v. Department of Labor & Indus.*, 46 Wn.2d 404, 281 P.2d 859 (1955). In *Roberts*, the physician testifying on behalf of the claimant first examined him only 5 days before the Board hearing. He was asked specifically if he could estimate what the claimant's condition was on the closing date. He responded: "No. I do know this condition progresses." *Roberts,* at 425. In *Harper* also, the doctor testifying on behalf of the claimant was specifically asked if he could estimate what the claimant's condition was just prior to the closing date. He answered: "No. That would be rather difficult." *Harper,* at 407.

In the instant case, Dr. Levenson, testifying on behalf of the Department, stated that Edwards was not totally disabled as a result of the 1971 heart attack and that his condition was fixed and stable. Dr. McDonough, who also testified for the Department, stated that Edwards' condition had not changed between 1977 and 1979. In contrast, Edwards' expert witness, Dr. Fisher, testified that Edwards was totally disabled by the heart attack, but he also stated that his condition was fixed and stable.

Thus, unlike *Roberts,* here it cannot be inferred from the expert testimony that the claimant's condition might have worsened between the closing date and the Board hearing. Yet, unlike both *Roberts* and *Harper,* the claimant's expert witness was not specifically asked to give an opinion of the claimant's condition on the closing date. Edwards' fatal mistake, the Department appears to argue, was in failing to ask Dr. Fisher specifically whether his opinion would have been the same on the closing date as it was 9 months later at the Board hearing. It is obvious, however, from Dr. Fisher's testimony, that his opinion would have been the same had that question been asked. In fact, given the testimony of all three physicians, there was evidence from which a jury could reasonably infer that the heart condition, being unchanging, was the same on August 27, 1979, the closing date, as it was on May 16, 1980, the date Dr. Fisher found him to be permanently and totally disabled.

Further, a jury could reasonably infer from Dr. Fisher's testimony that the supervisor's assessment of Edwards' disability in 1979 was incorrect. Therefore, the trial court erred in dismissing Edwards' appeal.

Accordingly, the trial court's order of dismissal is reversed and this case is remanded for a trial on the merits.

GROSSE, J., and JOHNSEN, J. Pro Tem., concur.