[No. 32632.    Department Two.    April 2, 1954.]

CLYDE F. MOSES, *Respondent,* v. THE DEPARTMENT OF LABOR
AND INDUSTRIES, *Appellant.*[1]

[1]Reported in 268 P. (2d) 665.

*The Attorney General* and *Russell A. Potter, Assistant,* for appellant.

*Walthew, Oseran & Warner,* for respondent.

DONWORTH, J.—In this action an injured workman seeks to be awarded a permanent total disability pension because of alleged aggravation of injuries received in an industrial accident which occurred on September 4, 1943.

Plaintiff initiated this action by filing with the board of industrial appeals a notice of appeal from an order of the supervisor of industrial insurance closing plaintiff's claim with no additional permanent partial disability award. At the time plaintiff filed the notice of appeal, he had already received an award of fifty per cent of the maximum allowable for permanent partial unspecified disabilities.

The board of industrial appeals ordered a hearing on the issues raised by plaintiff's appeal. At the hearing before the board on January 14, 1952, only two doctors testified (one for plaintiff and one for defendant). Based on the record made at the hearing, the board issued an order sustaining the order of the supervisor of industrial insurance, which closed the claim with no increase in plaintiff's award.

Plaintiff appealed to the superior court for Pierce county from the order of the board. Both parties waived a jury trial. After reviewing the record, the trial court entered judgment for plaintiff, reversing the order of the board and remanding the cause for allowance of a permanent total disability pension. Defendant appeals to this court.

At the outset, we are confronted with respondent's motion to dismiss the appeal for the alleged failure of appellant to comply with Rule 32 (34A Wn. (2d) 32), as amended, effective January 2, 1953, and Rule 34 (34A Wn. (2d) 36) of the Rules on Appeal. Respondent asserts that the statement of facts proposed and filed by appellant follows the procedure indicated in Rule 34, *supra,* relative to a short form statement of facts. Based upon that assertion, respondent argues that the appeal must be dismissed because of appellant's failure to serve and file a concise statement of the points on which he intends to rely on the appeal (as required by Rule 32, *supra*), which is a jurisdictional step.

However, examination of the record fails to disclose that appellant has filed a short form statement of facts as respondent contends. The trial court certified that the statement of facts *"contains all the material facts, matters and proceedings heretofore occurring in said cause and not already a part of the record herein. . . ."* (Italics ours.)

█ The trial court used almost *verbatim* the language of Rule 37 (34A Wn. (2d) 40) relating to the certification of a complete statement of facts. In such a situation, we are required to accept the trial court's certification as correct.

█ Thus it is apparent that this court has before it exactly the same evidence that the trial court considered in reaching its decision. This appeal, therefore, is not upon a short record, and Rule 34 had no application. Respondent's motion to dismiss must be denied. *Davis v. Gibbs,* 39 Wn. (2d) 176, 234 P. (2d) 1077.

Turning now to the merits, we note that appellant has made four assignments of error, which raise a single issue.

Appellant's brief states the question before us as follows:

"All four assignments of error may be considered together since they all concern the single contention of appellant that the Board's Record in this matter does not contain sufficient evidence, as a matter of law, to establish a claim of aggravation."

Since appellant's assignments raise a challenge to the sufficiency of the evidence to support the judgment, this

court will be governed by the rules relative to a challenge to the sufficiency of the evidence.

In the recent case of *Hardung v. Green,* 40 Wn. (2d) 595, 244 P. (2d) 1163, we restated those rules as follows:

"A challenge to the sufficiency of the evidence or a motion for a nonsuit admits the truth of the evidence of the party against whom the challenge is made, and all inferences reasonably to be drawn therefrom. It requires the evidence to be interpreted most strongly against the moving party and in the light most favorable to the opposing party.

"Such motions can be granted only when it can be held as a matter of law that there is no evidence, nor reasonable inference from evidence, to sustain a verdict for the opposing party."

With these rules in mind, we shall summarize so much of the facts as are necessary for a determination of this appeal.

Respondent was fifty-six years old when injured September 4, 1943, while employed by the Seattle-Tacoma Shipbuilding Company. He was rolling a barrel weighing more than four hundred pounds on its bottom edge when the barrel became overbalanced and knocked him down and fell on his lap when he landed in a sitting position.

He suffered two bilateral inguinal hernias, which were successfully repaired by a surgical operation. His claim for benefits under the industrial insurance act was allowed. On December 30, 1943, his claim was closed with payment of compensation for time loss to that date.

Respondent returned to work. While standing on a ladder painting, his back "locked" on him, paralyzing his legs. He was taken to a hospital. His claim was reopened January 30, 1944, and he received treatment.

Some time later, he sneezed while stooping over, and his back was thrown out again and he was paralyzed. He was returned to the hospital and received more treatments. On June 8, 1945, his claim was closed with the award of the fifty per cent disability rating heretofore mentioned.

On September 30, 1946, he applied to reopen the claim. This application was denied, and he appealed to the superior

court. A jury found in his favor by answering "Yes" to this interrogatory:

"Did the condition of the claimant become aggravated after June 18 [8], 1945, and prior to August 9, 1946, as a result of his injury of September 4, 1943, and should his claim be reopened?"

A judgment was entered for respondent on the verdict. No appeal was taken by appellant. Respondent's claim was reopened. He was referred to Dr. Darrell Running for treatment. Dr. Running examined respondent, did not treat him, but referred him to another doctor. Later respondent was referred to still another doctor, who intended to give respondent six spinal injections called "caudal blocks."

Only four spinal injections were given, because the last two injections he received caused such a severe reaction that he became unconscious and had to be given oxygen.

After the spinal injections were discontinued, respondent received no treatments except applications of heat to his back. He last worked in 1946 tending tar pots for the city of Tacoma. He had to quit the job because he could not do the necessary stooping.

Since 1947, he has operated a small trailer camp, but has done no physical work there, hiring others to do all of the work under his supervision and giving free rent to certain tenants in return for their labor.

Respondent's medical testimony in support of his application for an increased award was given by Dr. Darrell Running, a general practitioner. The doctor first saw respondent on February 24, 1949. Dr. Running testified as to the history of the injury and the treatments respondent had received, as related to him by respondent at that time. But Dr. Running did not testify as to any findings he made in any physical examination which may have been given respondent on that date.

The doctor testified he next saw respondent on March 5, 1951, at which time he gave him a physical examination. Dr. Running described in detail the findings he made as to respondent's physical condition on that date and also described in similar detail the findings he made during

another examination of respondent on January 11, 1952, in preparation for the hearing before the board.

Dr. Running then testified on his direct examination as follows:

"Have you had an opportunity to examine the x-rays? A. Yes, I looked at the films. Q. Would you tell us in general what the x-rays show? A. Generally show extensive hypertrophic lipping, extensive hypertrophic arthritis involving the vertebrae. Q. Doctor, would you give us your diagnosis here? A. He has a spinal arthritis . . . and I believe that at the time of his injury the symptoms suggested a disc, spinal disc injury, although I have not been able to elicit any definitely confirmatory objective findings to support that. Q. Assume, Doctor, that the history of injury that you told us here today of September 4, 1943, is correct, and assume that this man had no trouble in his back before the injury, can you give us an opinion as to whether or not this arthritis that you found in his spine is or is not connected with this injury? [objection interposed and overruled.] A. I feel that the arthritis in his back certainly pre-existed his injury, but I am certain that his injury is responsible for his *present symptoms,* his disability, whether through . . . A. (Continuing) Want me to repeat? I am sure that the spinal arthritis that *he has* pre-existed his injury, but I believe that his *present disability* is the result of the injury or is the result either because of aggravation of his arthritis or is a result of a spinal disc injury. . . ." (Italics ours.)

All of the rest of Dr. Running's testimony was in the present tense. He expressed an opinion that respondent, *at the time of the hearing,* was unable to work, that his condition was fixed and permanent and was connected with the injury he received.

The first question on this appeal is whether the foregoing medical testimony is sufficient to support the judgment, considering all of the testimony as true and drawing therefrom all reasonable inferences in support of respondent's claim.

A second question is whether, even if the medical testimony is insufficient, the judgment still must stand because the former judgment, based upon a jury verdict, un-

appealed from by appellant, is *res judicata* on the issue of aggravation in this case.

■ On the issue of the sufficiency of the medical testimony, the rule followed by this court is that, to establish a claim for an increase in an award as a result of the aggravation of a prior industrial injury, the burden is on the claimant to produce medical evidence, some of it based on objective findings, to prove that there has been an aggravation of the injury which resulted in increased disability. *Kresoya v. Department of Labor & Industries*, 40 Wn. (2d) 40, 240 P. (2d) 257; *Wissink v. Department of Labor & Industries*, 40 Wn. (2d) 672, 245 P. (2d) 1006.

■ In addition to proving by medical testimony that there has been some aggravation of the injury, a claimant must show that the increased aggravation occurred between the terminal dates of the aggravation period. *Karniss v. Department of Labor & Industries*, 39 Wn. (2d) 898, 239 P. (2d) 555; *Kleven v. Department of Labor & Industries*, 40 Wn. (2d) 415, 243 P. (2d) 488; *Turner v. Department of Labor & Industries*, 41 Wn. (2d) 739, 251 P. (2d) 883; *Gillmer v. Department of Labor & Industries*, 42 Wn. (2d) 387, 255 P. (2d) 899, and *Olson v. Department of Labor & Industries*, 43 Wn. (2d) 85, 260 P. (2d) 313.

The terminal dates in this case are June 8, 1945, when appellant closed respondent's claim with an award of fifty per cent disability, and May 17, 1950, when respondent's case was last closed by appellant without any increase in the percentage of disability. Therefore, the aggravation period is from June 8, 1945, to May 17, 1950, and under the rule laid down in the foregoing cases, respondent's medical testimony in order to be sufficient must show that his condition became aggravated *during that period.*

Appellant contends that respondent's medical testimony wholly fails to show any aggravation of his condition *during that period.* Appellant does not deny that Dr. Running's testimony shows aggravation in respondent's condition. Instead, it is appellant's position that the doctor's testimony concerning aggravation of respondent's condition was di-

rected to the period *after May 17, 1950*, the final date on which respondent could show any aggravation for the purpose of this appeal.

Analyzing the doctor's testimony, we note that Dr. Running saw respondent only once (in February, 1949) before the end of the aggravation period. However, Dr. Running did not testify as to any facts that he found as the result of the physical examination given respondent on that date, though the doctor did state the detailed findings he made when physically examining respondent on two later dates.

■ A study of the doctor's testimony makes it very clear that he was giving his opinion as to the respondent's physical condition *as of the date of the hearing before the board,* which was January 14, 1952, almost twenty months after the end of the aggravation period.

In that respect, this case is almost identical with the *Turner* case, *supra,* in which this court said:

"The only medical evidence of permanent total disability was given by the physician who examined appellant, at the request of his attorney, on April 25, 1950, which was approximately one month after the date of the supervisor's order. This physician testified that, in his opinion, appellant was totally and permanently disabled as a result of his accident. It clearly appears from the record, however, that in stating his opinion *the witness was referring to appellant's condition as of the date he testified,* which was May 22, 1951, more than one year after the supervisor had closed the claim." (Italics ours.)

Under the rule laid down and followed by this court in five very recent decisions (*Karniss, Kleven, Turner, Gillmer* and *Olson* cases, *supra*) we must hold that the medical evidence in this case is insufficient to sustain the judgment. We are convinced that these cases lay down a fair rule and one that is required for the orderly disposition of aggravation claims.

Respondent contends, however, that even if the medical evidence is insufficient, the prior judgment in his favor rendered after a jury had found that his condition became

aggravated after June 18 [8], 1945, and prior to August 6, 1946, is *res judicata* of the issue of aggravation in this case.

Assuming that the prior judgment is *res judicata*, it is only *res judicata* of the fact that respondent suffered some indefinite amount of aggravation of his injury between June 18 [8], 1945, and August 6, 1946. Since the jury answered no interrogatory setting out the percentage of increase in aggravation, this court has no way of knowing how much aggravation respondent suffered during that period. Did the jury find that respondent's injuries had been aggravated an additional one per cent, ten per cent, twenty-five per cent, or fifty per cent?

■ The burden of proving the percentage of aggravation of his disability is on the claimant in an aggravation case. The claimant here does not meet that burden by proving that there has been *some* aggravation, where the percentage of the aggravation is not established. See *Karniss, Kleven* and *Gillmer* cases, *supra*.

Since the jury verdict and judgment on which respondent relies could be *res judicata* only in establishing that respondent suffered some indefinite aggravation between the controlling terminal dates, the prior judgment is not sufficient to support the judgment in this case awarding him a permanent total disability pension.

Therefore, since respondent's medical testimony was insufficient, and since the prior judgment he relies on was not *res judicata* on the issues in this case, the judgment must be reversed.

Consequently, the judgment is reversed and the case remanded with directions to dismiss the action. The dismissal shall be without prejudice to respondent's right to move to reopen his claim as to any aggravation which may have occurred since May 17, 1950, when his last claim was closed by appellant.

It is so ordered.

GRADY, C. J., SCHWELLENBACH, HILL, and WEAVER, JJ., concur.