[No. 33206.    Department Two.    July 28, 1955.]

JAMES PRINCE, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

*The Attorney General* and *William C. Hallin, Assistant,* for appellant.

*Walthew, Oseran & Warner,* for respondent.

PER CURIAM.—This is an aggravation case, and our opinion in *Johnson v. Department of Labor & Industries* (1954), 45 Wn. (2d) 71, 273 P. (2d) 510, is decisive of it. The law applicable to the present case is there stated. We will not restate it but will confine ourselves to a statement of the testimony to show that the factual pattern of the case is the same.

There, as here, a claimant failed to prove by medical evidence a total and permanent disability or any percentage of aggravation of his disability between the terminal dates of the claimed aggravation period.

The claimant in this case was injured September 16, 1946.

[1]Reported in 286 P. (2d) 707.

The terminal dates of the claimed aggravation period were July 14, 1949, when his claim was closed by the department of labor and industries with an award of fifteen per cent of the maximum allowable for unspecified disability, and December 1, 1950, when the department rejected his claim for aggravation. All of the doctors who testified were agreed that the claimant was totally and permanently disabled, so far as any heavy work was concerned, on or before October 7, 1952, the date of his examination by Dr. Howard B. Kellogg. The claimant had an osteoarthritis which pre-existed his injury but was lighted up by it. Heart and stomach conditions from which he suffered concededly had no connection with his employment or his injury.

Dr. Kellogg was of the opinion that, as of the date of his examination, October 7, 1952, the claimant was not able to do any heavy work, and that the arthritic condition, regardless of any other contributing causes, was sufficient to account for that condition. He was also of the opinion that the arthritis was attributable to the injury of September 16, 1946, and that the arthritic condition had progressed between the terminal dates of July 14, 1949, and December 1, 1950. *He stated that he had no way of knowing the extent of increase of disability during the aggravation period.*

(Dr. Kellogg's testimony was conceded by the trial court to be insufficient to establish a *prima facie* case, but reliance was placed upon the testimony of Dr. James A. Baker as buttressing the testimony of Dr. Kellogg sufficiently to make a case for the jury.)

Dr. Baker was the claimant's attending physician. He filled out the claimant's claim for aggravation on July 3, 1950. He testified that, as of that date, the claimant's osteo-arthritic condition had become worse since the closing of his claim. He testified, further, that, as of July 3, 1950, the claimant was unable to work because of a combination of disabilities, the first being his osteoarthritis, the second being his heart condition, the third being his stomach condition. Claimant had been in the veterans' hospital for both the heart and stomach conditions. Dr. Baker's belief

was that, as of July 3, 1950, the claimant "would have been able to work, and would have worked if the heart condition and the stomach condition were not also present."

■ Dr. Baker's testimony establishes that the claimant's osteoarthritis was worse on July 3, 1950, than it was when his claim was closed, but it does not establish any percentage of increased disability and it negatives total disability as of that date attributable to the osteoarthritis. Dr. Baker's testimony, together with that of Dr. Kellogg, establishes neither total and permanent disability during the claimed aggravation period nor any percentage of increase in disability during that period.

■ Concededly, in preparing the claim for aggravation on July 3, 1950, Dr. Baker had made a statement inconsistent with his testimony and more favorable to the claimant, to the effect that, as of that date, the claimant was unable to work and his condition was due to his injury. This, however, is not evidence on which the claimant can rely to establish his case, because it is not the testimony of the doctor. It is at most a prior unsworn, inconsistent statement which could serve no purpose except that of impeachment. We had the identical situation before us in *Strmich v. Department of Labor & Industries* (1948), 31 Wn. (2d) 598, 198 P. (2d) 181, where a claimant was relying upon a statement made by his doctor in his application to reopen his claim for aggravation. We there said (p. 604):

"In the second place, when a doctor testifies under oath in a hearing before the joint board as to his findings and conclusions, that testimony must be accepted as his findings and conclusions. To prove that at some prior time either his findings or his conclusions or both were different, may or may not reflect upon his credibility (even doctors may change their minds), but it does not change the testimony given. The appellant cannot prove his own case by evidence that was admissible only for purposes of impeachment, *i.e.*, by showing that the doctor had at another time made a statement more favorable to the appellant than his testimony before the joint board."

See, also, *Halder v. Department of Labor & Industries* (1954), 44 Wn. (2d) 537, 268 P. (2d) 1020.

The testimony of Dr. R. A. Watkins was quite unfavorable to the claimant's contentions, but the claimant quotes in his brief one excerpt from that testimony to the effect that, if the claimant had not had heart trouble, he probably could have done light work, but nothing that would require heavy lifting or sustained activity. This, the claimant urges, under the instructions given supports his contention that, so far as his occupation as a logger is concerned, he is totally and permanently disabled.

It is clear that Dr. Watkins was testifying as of the date of his last examination of the claimant, January 14, 1952. Given the full effect claimed for this statement, Dr. Watkins' testimony, like that of Dr. Kellogg and Dr. Baker, fails to establish total and permanent disability or any percentage of increased disability resulting from the injury of September 16, 1946, within the aggravation period.

We have disregarded the testimony of Dr. E. L. Calhoun, as the claimant places no reliance on it and makes no mention of it.

On the authority of *Johnson v. Department of Labor & Industries, supra,* the judgment is reversed, with instructions to the trial court to enter a judgment of dismissal without prejudice to the claimant's right to move to reopen his claim as to any aggravation which may have occurred since December 1, 1950.