[No. 33262. Department One. February 23, 1956.]

JESSIE WHITE, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

*The Attorney General* and *William C. Hallin, Assistant,* for appellant.

*Walthew, Oseran & Warner,* for respondent.

FINLEY, J.—On February 21, 1949, the claimant, Jessie White, sustained an injury to his back while he was employed as a sandblast helper with the Atkinson-Jones Construction Company. After receiving heat treatments for three days, he returned to work "on light duty," but he continued to receive medical treatment until he was laid off in May of 1949. A report of the accident was filed with the department of labor and industries on June 8, 1949. *On*

[1]Reported in 293 P. (2d) 764.

*June 16, 1949, the supervisor closed the claim.* The department allowed medical treatment to White, *but made no award for time loss or for permanent partial disability.*

On December 8, 1949, the claimant made application to reopen the claim for aggravation. The application was denied by the supervisor on *September 22, 1950.* A timely appeal was taken to the board of appeals, which, after a hearing, entered an order on February 9, 1954, sustained the supervisor's order issued on *September 22, 1950.* The claimant then appealed to the superior court. A jury rendered a verdict in favor of the claimant. In doing so, the jury answered the following two special interrogatories as follows:

"INTERROGATORY No. 1: Was the Board of Industrial Insurance Appeals correct in finding that the plaintiff did not suffer an aggravation of his condition, as a result of his industrial injury, between June 16, 1949, and September 22, 1950?

"ANSWER: No.

"INTERROGATORY No. 2: Expressed in percentage terms, what was the extent of the aggravation of plaintiff's condition between June 16, 1949, and September 22, 1950, as a result of his industrial injury?

"ANSWER: 25% of the unspecified (not to exceed 50%) . . ."

The department's motion for judgment notwithstanding the verdict was denied, and this appeal followed. Two significant questions are presented to us: (1) whether the supervisor's closing order of June 16, 1949, indicating the claimant had suffered no permanent disability, is *res judicata* as to the claimant's condition or disability as of that date; and (2) whether the evidence was sufficient to support the conclusion of the jury that there was an aggravation of the claimant's industrial injury between June 16, 1949, and September 22, 1950.

As to the first question set out above, it is clear that no appeal was taken from the supervisor's order closing the claim on June 16, 1949. We think the department should be bound by this order. In other words, it was *res judicata* as to the extent of the claimant's injury at that time. It was

not *res judicata,* however, as to subsequent aggravation. *Karniss v. Department of Labor & Industries,* 39 Wn. (2d) 898, 239 P. (2d) 555; *Kleven v. Department of Labor & Industries,* 40 Wn. (2d) 415, 243 P. (2d) 488.

■ To establish his claim for aggravation of a prior industrial injury, the burden was on the claimant to prove by medical testimony (some of it based on objective findings) that an aggravation of his condition occurred between the terminal dates; *i.e.,* June 16, 1949, when the department closed his claim allowing only medical treatment, and September 22, 1950, when the department refused to reopen his claim for aggravation. *Moses v. Department of Labor & Industries,* 44 Wn. (2d) 511, 268 P. (2d) 665; *Johnson v. Department of Labor & Industries,* 45 Wn. (2d) 71, 273 P. (2d) 510.

The testimony of Dr. James E. Jackson in behalf of the claimant may be summarized as follows: Dr. Jackson examined the claimant for the first time on February 6, 1951, four and one-half months subsequent to the second terminal date. As a result of the examination, Dr. Jackson diagnosed the claimant's condition as a traumatic sprain of the low back, presumably between the fourth and fifth lumbar vertabrae, and secondly, traumatic arthritis of the lower spine. It was his opinion that the existing arthritic condition was caused by the injury received in 1949. He was also of the opinion, however, that the claimant's condition had become fixed a year prior to his examination. This was based upon a comparative study of X-ray films taken by Dr. Jackson in May of 1953 with those taken by the department on April 13, 1950.

The doctor's testimony concerning the aggravation of claimant's condition between the terminal dates was as follows:

"Q Assume the claimant, or the patient that you have been treating, Jessie White, had no disability in June of 1949, can you form an opinion as to whether or not his condition became worse or aggravated between June of 1949 and April of 1950? . . . A I can. Q And what is your opinion, Doctor? . . . A *That his condition wors-*

*ened during that period.* Q Doctor, at the time of your examination—By MR. LAWRENCE: Q That is, his pathological condition worsened? A Yes." (Italics ours.)

When asked to evaluate the disability existing as of April, 1950, Dr. Jackson was questioned, and replied as follows:

"Q Could you evaluate his disability existing as of that date based upon the films you reviewed and the history you received from this man? . . . A I would say that there wasn't much change there because I believe his condition was fixed at that time, and I would say it was about the same as the rating I would give him as of my examination. . . . Q What would that percentage be? A I would say 50%."

It is true that Dr. Jackson's initial physical examination was made subsequent to the second terminal date, but this is not a case where the doctor's opinion of the claimant's aggravated condition was restricted solely to *the date of the examination or the date the doctor testified.* Nor is there an absence of medical evidence of an objective nature in the record on which the doctor could base his opinion. Dr. Jackson testified that the claimant's condition became worse *during the aggravation period.* He based his opinion upon the history received from the claimant, a comparative study of the X-ray films he took in 1953 with those taken by the department on April 13, 1950 (a date within the aggravation period) and his own examination.

The evidence was sufficient to take the case to the jury. The weight to be given the doctor's testimony was within the province of the jury. Its verdict should not be disturbed.

The action of the trial court in denying appellant's motion for judgment notwithstanding the verdict was not error. The judgment should be affirmed. It is so ordered.

HAMLEY, C. J., SCHWELLENBACH, DONWORTH, and OTT, JJ., concur.

---

May 16, 1956. Petition for rehearing denied.