[No. 33482. *En Banc.* December 5, 1956.]

ERNEST E. LYLE, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

[1] Reported in 304 P. (2d) 668.

The *Attorney General* and *John C. Martin, Assistant,* for appellant.

*Walthew, Oseran & Warner (Eugene Arron,* of counsel), for respondent.

HILL, J.—This is an aggravation case. The sole issue is succinctly stated in an instruction to which neither the claimant nor the department of labor and industries took exception:

"The sole issue for your determination is whether or not the plaintiff's disability has increased between December 20, 1951 and June 2, 1952, as a result of his December 5, 1949 injury and, if so, to what extent. You cannot consider any increase in plaintiff's disability, if any, which may have taken place after June 2, 1952, as the Workmen's Compensation Act provides a means by which the plaintiff can procure compensation for any such increase in disability."

The following statement, taken from the decision and order of the board of industrial insurance appeals, is supported by the evidence:

"The claimant . . . sustained an industrial injury on December 5, 1949, while in the employ of San Poil Lumber Company, at Republic, Washington. On that date while working as a rough carpenter, the claimant was attempting to move a warehouse door with the help of several employees. The door weighed approximately nine hundred pounds and was ten and one-half feet square. The door fell upon the claimant and he was taken to a hospital. He filed an accident report with the department of labor and industries. His claim was allowed and on February 10, 1950, he was operated upon for a right inguinal hernia, which was caused by the trauma of the heavy door falling upon him. On

August 31, 1950, the supervisor of industrial insurance issued an order closing his claim with the following permanent partial disability awards: Five percent of the amount allowable for the amputation value of the left leg at the hip; five percent of the amount allowable for the amputation value of the right arm at the shoulder and five percent of the maximum allowable for unspecified permanent partial disabilities. On October 19, 1951, the claimant made application to reopen his claim on the basis of aggravation of condition. On December 20, 1951, the supervisor issued an order denying his application to reopen his claim on the basis of aggravation. This order was not appealed from. On April 1, 1952, the claimant made another application to reopen his claim on the basis of aggravation of condition. On June 2, 1952, the supervisor issued an order denying his application to reopen for aggravation. The claimant has taken timely appeal to this board from the supervisor's last order."

We supplement the foregoing with the following information:

Following the hernia operation on February 10, 1950, the claimant continued to "take it easy" until June 1, 1950, when he began work as a janitor in a school in Republic, Washington. He quit April 14, 1951, because he "couldn't keep up on the work on account of my feet or leg."

He acquired and operated a restaurant from June 20, 1951, until June, 1952. He gave up that business "on account of the feet and legs": and he then "let my feet and legs rest as much as I could" until August, 1952. When he testified, in March, 1953, he was "just piece-mealing down in Wenatchee."

It was during the period of the restaurant operation (October 19, 1951) that he filed his first petition to reopen the claim on account of aggravation and the petition was denied (December 20, 1951). It was also during that period (January, 1952) that he sprained his left ankle, a nonindustrial injury to which the department attributes the condition of his left foot and leg.

The evidence to take this case to the jury on the issue of whether there was any aggravation of the claimant's disability between the terminal dates of the aggravation period

(December 20, 1951, and June 2, 1952) must rest upon the ·testimony of Dr. Richard H. Humphreys.

Dr. Humphreys had performed the inguinal hernia operation. During the course of the operation, he had removed a strip of fascia (a tough membrane) from the claimant's right hip and used it to sew up the hernia, a procedure which has been found effective in preventing the recurrence of hernias. In connection with the hernia operation and post-operative care, Dr. Humphreys saw the claimant on March 21, 1950. At that time, "the repair of the hernia was solid and well-healed and there was no abnormality of any sort."

Dr. Humphreys next saw the claimant on September 17, 1951, at which time the claimant complained of a "sensation of hotness running down the outer side of his right leg and complained that it caused him to limp and it was generally making him uncomfortable." The doctor "felt that there was a very definite weakness of the right thigh and very likely a protrusion of the muscles of his thigh to the defect where we removed the fascia for the purpose of repairing the hernia." Because of the claimant's condition on September 17, 1951, Dr. Humphreys thought that there had been such aggravation as to warrant reopening the claim, and he so advised the claimant.

█ An application to reopen was made, supported by Dr. Humphrey's statement. On December 20, 1951, as we have seen, that application was denied; and the denial was not appealed from. Hence, the burden now devolves upon the claimant to prove aggravation of his disability subsequent to December 20, 1951. *Karniss v. Department of Labor & Industries* (1952), 39 Wn. (2d) 898, 239 P. (2d) 555. See, also, *White v. Department of Labor & Industries* (1956), 48 Wn. (2d) 413, 293 P. (2d) 764; *Prince v. Department of Labor & Industries* (1955), 47 Wn. (2d) 98, 286 P. (2d) 707; *Moses v. Department of Labor & Industries* (1954), 44 Wn. (2d) 511, 268 P. (2d) 665; *Kleven v. Department of Labor & Industries* (1952), 40 Wn. (2d) 415, 243 P. (2d) 488. It is in the proof of aggravation subsequent to December 20, 1951, that the claimant's case is fatally weak.

Dr. Humphreys did not see the claimant again until July 12, 1954, the day before he testified at the hearing of the board of industrial insurance appeals and some twenty-five months after the terminal date of June 2, 1952.

Relative to any increase of disability of the left leg and foot between the terminal dates, he testified that his most recent examination (July 12, 1954) showed "quite a limitation of motion in the ankle joint—a definite deformity of the heel and inability to walk without a limp. That was not present previously." He added, in response to a further question, that he felt that "the initial degree of disability was relatively small, I would say probably five percent—probably at the present time, about twenty percent."

To relate the doctor's testimony of twenty per cent disability of the left leg and foot in 1954 to the terminal date of June 2, 1952, this hypothetical question was propounded:

"Doctor, with that assumption that the complaints of Mr. Lyle were approximately the same with respect to the left leg on June 2, 1952. Based upon your examination in '54, would your opinion be, what would your opinion be as to the percentage say, two years prior thereto?"

The doctor answered that it would be the same, that is, twenty per cent.

To support the assumption contained in the hypothetical question, the claimant was recalled as a witness and testified as follows:

"Q. Do you recall in June of 1952 the last time the Department closed your case? A. Yes. Q. Now your left leg was bothering you then? A. Yes. Q. And you saw Dr. Humphreys just yesterday, is that correct? A. Yes. Q. And that same condition was bothering you when you saw Dr. Humphreys? A. Yes. . . . Q. The disability that you had in '52, was that disability—how did that disability compare to when you saw Dr. Humphreys in 1954? A. Well, it is worse now than it was then. My leg now and foot are bothering me now more than it did in 1951 or '52."

■ It is quite apparent that the assumption that the condition of the claimant's left leg was the same in 1952 and 1954 is not supported by the evidence; consequently, the answer to the hypothetical question has no probative value.

Dr. Humphreys also testified that the increase of disability in the claimant's right thigh between December, 1951, and June, 1952, was "probably from ten percent to forty percent."

However, on cross-examination Dr. Humphreys testified that the increase in disability from ten per cent to forty per cent as to the right thigh and from five per cent to twenty per cent in the left leg and foot had developed between the time of the operation in 1950 and the examination on September 17, 1951. He was most emphatic that there had been aggravation, particularly as to the right thigh, prior to the latter date, which preceded the first petition to reopen for aggravation. When asked in cross-examination whether it was impossible for him to say what the claimant's condition was in June, 1952, Dr. Humphreys answered:

"No, that is not quite true. I wouldn't say that was true because if the man were in my office in September 17, 1951, as he was, complaining of pain and sensations of increased nerve irritability in the leg as he had, and if I detected, as I did, a hernia through the fascia, certainly there would be no reason to suspect his condition would be anything but the same or worse in June of 1952."

The foregoing is as strong a statement as he could be induced to make on cross-examination or redirect examination regarding the claimant's condition subsequent to September 17, 1951.

The claimant insists that Dr. Humphrey's testimony on cross-examination was no more than a contradiction of his direct testimony and that, while it may have been impeaching, it did not destroy the effect of his direct testimony and so left a question for the jury. In support thereof, the claimant cites *Halder v. Department of Labor & Industries* (1954), 44 Wn. (2d) 537, 268 P. (2d) 1020.

We cannot agree. The doctor's testimony on cross-examination was in effect a retraction of his direct testimony as to there having been any measurable increase in disability between December, 1951, and June, 1952.

There having been no evidence to take the case to the jury, it follows that the department's motion to dismiss

should have been granted or that, in any event, its motion for judgment notwithstanding the verdict should have been granted.

Judgment reversed, with instruction to dismiss the claimant's appeal from the order of the board of industrial insurance appeals.

DONWORTH, C. J., SCHWELLENBACH, WEAVER, and OTT, JJ., concur.

FINLEY, J. (dissenting)—The claimant suffered an industrial injury on December 5, 1949. The accident was reported to the department of labor and industries, thereafter, an award was made by the department on August 31, 1950. Claimant's application of October 19, 1951, to reopen the case was denied by an order of the department on December 20, 1951. There was no appeal from this order. Claimant's second application of April 1, 1952, to reopen on the ground that his condition had become aggravated was denied on June 2, 1952. Claimant appealed on June 12, 1952, to the board of industrial insurance appeals. The board held hearings on March 18, 1953, and July 13, 1954, and took additional evidence; but on October 18, 1954, it affirmed the department's denial of the claim of aggravation.

Claimant then appealed to the superior court on November 9, 1954. A jury found aggravation, and increased the award to the claimant. Judgment was entered on the jury's verdict on June 8, 1955. The department appealed on July 1, 1955, and is contending here that there was no evidence that claimant's condition became aggravated within the terminal dates (December 20, 1951, through June 2, 1952); and it is urged that, under the rule of *Karniss v. Department of Labor & Industries,* 39 Wn. (2d) 898, 239 P. (2d) 555, the trial court erred in denying a motion for a directed verdict and for judgment, n.o.v.

On January 17, 1956, the appeal was argued before a department of the supreme court. On March 19, 1956, it was ordered that the case be set for rehearing before the entire court. The appeal was reheard on May 8, 1956.

With no intention of blaming anyone, and without

attempting to pass the buck for the delay in a final determination of the rights of the claimant in the instant case, it is obvious that the procedure has been a long, drawn-out one, contrary to the purpose of the workmen's compensation act to provide sure and prompt settlement of workmen's industrial accident claims. It is high time that something be done to correct the situation.

Turning now to a discussion of the issues in the instant case as I see them, the record shows that Dr. Richard H. Humphreys operated on the claimant to repair an inguinal hernia, allegedly caused by an industrial injury. He examined the claimant on March 21, 1950, September 17, 1951, and July 12, 1954. His testimony before the industrial appeals board, based upon his examination of claimant on July 12, 1954, standing alone, indicates that the extent of claimant's disability at that time was greater than that previously recognized by the department. However, the majority (citing *Karniss, supra*) say that it is not a question of comparing claimant's condition as of July 12, 1954 (the date Dr. Humphreys last examined the claimant), with (a) his condition on July 2, 1952 (the date the department denied claimant's second application to reopen); or (b) his condition on August 31, 1950 (the date of the department's award); that the only question is whether the claimant's condition became aggravated between the terminal dates (December 20, 1951, through June 2, 1952).

The majority emphasize an instruction (a) given to the jury by the trial court and (b) not excepted to by the claimant. The instruction limited the jury to a determination of whether aggravation had occurred between the terminal dates. Analyzing the testimony of Dr. Humphreys, the majority state (a) that it does not concern and is not material to the question of aggravation between the terminal dates; and, in any event, (b) that the significant portion of the testimony has no probative value, either because it was retracted by the doctor, or because a hypothetical question put to the doctor assumed facts which were not supported by the evidence. I cannot disagree altogether with the reasoning of the majority, but I think, for the reasons indi-

cated hereinafter, that much of it is beside the point and is inappropriate; that it leads to an unnecessary and wrong result in the instant case.

RCW 51.52.100 provides that the hearing before the board shall be *de novo*; and, furthermore, RCW 51.52.102, in part,. provides as follows:

"That the board may continue hearings on its own motion *to secure in an impartial manner such evidence, in addition to that presented by the parties as the board, in its opinion, deems necessary to decide the appeal fairly and equitably,* but such additional evidence shall be received subject to any objection as to its admissibility, and, if admitted in evidence all parties shall be given full opportunity for cross-examination and to present rebuttal evidence." (Italics mine.)

The above-quoted statute unquestionably authorized the board to admit and to consider additional evidence relative to any aggravation between the terminal dates. I think it also clearly authorized the board to admit and to consider evidence as to any aggravation occurring after the date of the department's last closing order, June 2, 1952, and up to and including the date of the hearing before the board, in order to decide the appeal "fairly and equitably." It is well known that when evidence outside the pleadings is properly admitted by a trial judge the pleadings may be amended to conform to the proof. I see no reason why the board could not do likewise, since, under the above statute, the hearing is *de novo*, and the board may secure such additional evidence as it deems necessary to decide the appeal fairly and equitably. In other words, the function of the board at and after the *de novo* hearing was not that of technical appellate review. The board was not and should not have been limited to the issue technically raised in the notice of the appeal which was taken from the order of the department of labor and industries.

As mentioned heretofore, the testimony of Dr. Humphreys, standing alone, and as evaluated in the majority opinion, appears to show a worsening of the claimant's condition between June 2, 1952, and the termination of the hearing before the board on July 13, 1954.

The majority opinion reverses the judgment of the trial court with the instruction that the appeal from the order of the board be dismissed. However, within the period permitted by the statute of limitations, the claimant can again apply to the department to reopen his case, and he can attempt to show aggravation subsequent to June 2, 1952. Once again, I emphasize that such a procedure is circuitous, long drawn out, and not in keeping with the spirit and intent of the state workmen's compensation act to provide sure and quick settlement of the claims of injured workmen.

I would remand the case to the trial court with instructions that the judgment be vacated and that the case be returned to the board for a determination as to whether the entire record shows a worsening or aggravation of the claimant's condition between December 20, 1951, and July 13, 1954, or, for that matter, up to the date of the rehearing before the board. Certainly, there should be no argument that such a result makes good sense in terms of administrative procedure and should expedite the handling of aggravation claims.

MALLERY and ROSELLINI, JJ., concur with FINLEY, J.

———————

January 17, 1957. Petition for rehearing denied.