[No. 33603. *En Banc.* August 7, 1958.]

RUSSELL D. PAGE, *Respondent, v.* THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

[1]Reported in 328 P. (2d) 663.

*The Attorney General* and *Haydn H. Hilling, Assistant,* for appellant.

*Walsh & Margolis,* for respondent.

ROSELLINI, J.—The department of labor and industries appeals from a judgment on a verdict increasing a permanent partial disability award from thirty-five per cent to seventy-five per cent.

The respondent was injured on February 3, 1953, while working on the construction of a false ceiling for a large hangar at Boeing airfield, Seattle. The ceiling collapsed, dropping him about thirty-five feet, and covering him with sand. The respondent suffered injuries to his back and chest.

Drs. Brugman, Rickett, and McConville examined the respondent for the department; however, Dr. Brugman was called as the respondent's witness. The doctors agreed that the appellant's disability resulting from his injuries did not exceed thirty-five per cent of the maximum allowable for unspecified disability, that he was able to engage in gainful occupation and to do medium work, but he was not able to return to heavy arduous labor.

On cross-examination, Dr. Brugman stated that the respondent could not lift more than fifty pounds, and that he could not do this more than once in an hour.

The respondent's wife testified that prior to her husband's injuries he was in excellent health and "strong as a mule," but that afterward he seemed to experience constant pain in his back when performing even the lighter tasks around the home.

Mr. A. L. Atherton, owner of the construction company, testified that during the late summer or early fall of 1953, respondent came to him several times seeking light employment, but that he had none available. He stated that prior to the accident, the respondent put in above an average day's work. He said that when respondent visited him seeking lighter work, he was limping, appeared rather stiff, and still had a brace on his back. Mr. Buchanan, business agent for the union, testified that prior to the injury, respondent was "quite able," that since then he had been trying to get a lighter job in industry for Mr. Page, but had been unable to do so because there were so few available.

The respondent concedes that there is no medical opinion in this record to the effect that Mr. Page should be awarded a certain percentage of disability in excess of that previously granted by the department. It is his contention, however, that given the necessary lay and medical evidence as to the *fact of disability*, it is up to the jury under proper instructions to interpret or project such evidence in terms of total disability or statutory percentage of partial disability.

In industrial insurance cases, permanent partial disability awards are fixed, or rated, on a percentage basis. In the case of *Kirkpatrick v. Department of Labor & Industries*, 48 Wn. (2d) 51, 290 P. (2d) 979 (1955), where an injured workman attempted to recover an increased award for a permanent partial disability, the court stated:

"In addition to proving by medical testimony that the injury caused some disability, there must be sufficient medical testimony to support the claim that, at the terminal date, the rate of disability was more extensive than that fixed by the department. *Johnson v. Department of Labor & Industries*, 45 Wn. (2d) 71, 73, 273 P. (2d) 510 (1954). The extent of disability, as it exists at any relevant date, must be determined by medical testimony, some of it based upon ob-

jective evidence. *Harper v. Department of Labor & Industries*, 46 Wn. (2d) 404, 406, 281 P. (2d) 859 (1955)."

In *Dotson v. Department of Labor & Industries*, 48 Wn. (2d) 855, 296 P. (2d) 1006 (1956), where a judgment granting the injured workman one hundred per cent of the maximum allowable for unspecified permanent partial disability was set aside because of failure of medical proof, we stated:

"In addition to proving by medical testimony that the injury has caused some disability, the claimant must show by medical testimony that on the closing date the rate of disability was greater than that fixed by the department. *Kirkpatrick v. Department of Labor & Industries, ante* p. 51, 290 P. (2d) 979; *Johnson v. Department of Labor & Industries*, 45 Wn. (2d) 71, 273 P. (2d) 510; *Moses v. Department of Labor & Industries*, 44 Wn. (2d) 511, 268 P. (2d) 665.

"The extent of the disability, as it exists at any relevant date, must be determined by medical testimony, some of it based upon objective symptoms. *White v. Department of Labor & Industries, ante* p. 413, 293 P. (2d) 764; *Kirkpatrick v. Department of Labor & Industries, supra; Harper v. Department of Labor & Industries*, 46 Wn. (2d) 404, 406, 281 P. (2d) 859; *Hyde v. Department of Labor & Industries, supra.*"

■ The rule as thus stated is that medical testimony is necessary to establish permanent partial disability.

■ This court has consistently held that in order for a claimant to recover on a claim of aggravation, he must prove more than the fact that there has been some increase of disability during the aggravation period. The percentage of aggravation must be established by medical testimony. See *Moses v. Department of Labor & Industries*, 44 Wn. (2d) 511, 268 P. (2d) 665; *Prince v. Department of Labor & Industries*, 47 Wn. (2d) 98, 286 P. (2d) 707; *Clayton v. Department of Labor & Industries*, 48 Wn. (2d) 754, 296 P. (2d) 676. In the last cited case, the claimant had received awards amounting to 52.25 per cent of the maximum allowed for unspecified permanent partial disability. In holding that the evidence was sufficient to sustain the jury's finding that the claimant had suffered an additional 22.75

per cent of permanent partial disability during the aggravation period, this court stated:

"It was, of course, necessary for the claimant to prove the percentage of additional permanent partial disability between the terminal dates. . . . *Medical men* are the only ones considered qualified to give an opinion on the amount of disabililty in terms of percentages. [Citing cases.] . . .

"Dr. DeDonato testified that the claimant's increased disability during the aggravation period, in terms of percentages, was 50%. Without his testimony there would be no support for the jury's finding of an additional 22.75% of permanent partial disability suffered between May 15, 1946, and October 4, 1951." (Italics ours.)

■ Expert testimony on the extent of an unspecified disability need not be in the language of the statute RCW 51.32.080, provided that the evidence adduced is probative of that fact. *Ziniewicz v. Department of Labor & Industries,* 23 Wn. (2d) 436, 161 P. (2d) 315 (1945).

■ The jury in an industrial insurance appeal, as in the case of any other jury question, may arrive at a verdict that lies between the opinions of expert witnesses who have testified. If there are two or more experts who disagree, nothing compels a jury to accept the exact opinion of any one or two of the experts; if, however, all of the experts' opinions are in substantial agreement as to the maximum compensation to be allowed, a jury cannot exceed the maximum amount testified to by the experts.

■ An expert witness, in fixing the extent of the unspecified permanent partial disability, should testify to the comparison of the unspecified disability with the schedule of disability it most closely resembles. RCW 51.32.080 (2) *Dowell v. Department of Labor & Industries,* 51 Wn. (2d) 428, 319 P. (2d) 843.

■ The jury in the instant case was apparently moved by the fact that the respondent's injuries had rendered him totally unable to do the work for which he had been previously qualified and thereby greatly curtailed his earning power. But compensation for unspecified permanent partial disability is awarded, not on the basis of loss of earning

power, but loss of bodily function. All of the medical witnesses were agreed that, in the respondent's case, the extent of such loss did not exceed thirty-five per cent.

■ Since, as this court has consistently held, a finding of disability in excess of that fixed by the department must be based upon medical testimony, the court erred in submitting the question to the jury.

A further error occured which merits comment. The only instruction regarding the extent of unspecified permanent partial disability was instruction No. 6 which recited that unspecified permanent partial disability must be expressed in percentage, but did not set forth a criterion or standard to follow in ascertaining this percentage.

The appellant took the following exception to this instruction:

"The statute provides that the unspecified disabilities will be determined by comparing them with that specified disability that most nearly resembles their disability in degree. The net result is to leave the jury without a guide that will enable it to have a reasonable basis for its decision."

■ The appellant's contention is borne out by RCW 51-.32.080 which provides in part:

"(1) For the permanent partial disabilities here specifically described, the injured workman shall receive compensation as follows:

"Loss By Amputation

"Of one leg so near the hip that an artificial limb cannot be worn .............................. $6000
"Of one leg at or above the knee so that an artificial limb can be worn............................. 4110
" . . .

"(2) Compensation for any other permanent partial disability shall be in the proportion which the extent of such other disability, called unspecified disability, shall bear to that above specified, which most closely resembles and approximates in degree of disability such other disability, but not in any case to exceed the sum of six thousand dollars: *Provided*, That the total compensation for all unspecified permanent partial disabilities resulting from the same injury shall not exceed the sum of six thousand dollars. For disability to a member not involving amputation, not more

than three-fourths of the foregoing respective specified sums shall be paid: *Provided further*, That payment for any injury to minor hand or arm or any part thereof, shall not exceed ninety-five percent of the amounts hereinbefore enumerated: . . . "

Thus, the legislature established a specific cash award for specific amputations and losses of faculties. However, because the multitude of possible injuries which would not involve those specific disabilities could not be foreseen nor individually provided for, the legislature established compensation on their account in accordance with the proportion of loss that the disability arising from any such injury should bear to the disability which would arise from a specified amputation or loss of faculty, *etc.*, for which an award is provided. This was necessary if the legislative plan of compensation in accordance with loss of bodily function (as distinguished from partial loss of earning power) was to be accomplished.

Of course, the legislature could not foresee the disability which would arise in every case from, for example, a ruptured spleen, a concussion, a damaged liver, a herniated intervertebral disk between any two of the various vertebrae of the back, or an injury to the ear with consequences beyond loss of hearing. Consequently, it was not in a position to establish a fair measure of compensation for any such disability until the degree of such disability had been competently evaluated; and, if the plan was to be workable and fair, the evaluation must bear a relationship to the evaluations of specific disabilities for which the legislature had been able to provide in advance. Such a comparative evaluation was so provided in RCW 51.32.080, *supra,* and this *proviso is the only authority in the law for payment of compensation on account of the so-called "unspecified disability."*

The failure of the evidence to sustain the jury's verdict for an increase in the award for permanent partial disability, compels us to reverse.

The judgment is reversed.

HILL, C. J., MALLERY, DONWORTH, WEAVER, and OTT, JJ., concur.

FOSTER, J. (dissenting)—It is a matter of regret to be unable to agree with the court's decision. However, the matter is so fundamental that a complete statement of the reasons for my dissent is appropriate.

The court decides that a physician witness must testify as to the precise percentage of disability, even though all of the facts respecting the disability are in evidence.

The evidence is amply sufficient to sustain the verdict. The accident was catastrophic. Respondent was on the roof of a revetment which collapsed, burying him under six hundred tons of sand and debris. Hospitalization ensued promptly, but he has not recovered his ability to work. He has constant pain in the back. The movements of the leg are limited, and the appellant's physician witness said he could not lift more than fifty pounds, and that could not be more often than once in an hour. The undisputed proofs are that respondent is stiff and sore, and even the appellant's medical witness admitted respondent walked with a limp which is the result of the accident. Appellant's medical witness testified the X rays of the respondent's spine showed a compression fracture of the lumbar vertebra, and the arthritic spurs on the spine were becoming progressively larger. Respondent alone knows whether he has pain or not, and the jury was entitled to believe his positive testimony in that respect.

It is undisputed that respondent never went beyond the seventh grade, has always been obliged to resort to heavy manual labor for a living, and is without training for anything else. Prior to the accident he was a strong able-bodied man without physical impairment. He worked constantly at heavy manual labor. His former employer testified his work was above the average.

Since his claim was closed, respondent has unsuccessfully attempted to obtain work although in that effort he was assisted by his former employer as well as representatives of the labor union of which he is a member. The undis-

puted testimony of the respondent and other lay witnesses as to his inability to engage in manual labor is amply sufficient to justify an award for even permanent total disability under *Kuhnle v. Department of Labor & Industries*, 12 Wn. (2d) 191, 120 P. (2d) 1003, and, as the whole is the sum of the parts, it necessarily follows that the evidence is sufficient to sustain a lesser award.

All facts touching respondent's disability were in evidence, from which the jury was as able to form a judgment respecting its extent as it is in any action, and the legislature has enacted that the jury's verdict shall have the same force and effect as in an action at law. While opinion testimony as to the percentage of disability is admissible, the actual decision must be made by the jury.

. The court's decision requires examination of the legal philosophy upon which expert or opinion testimony is admitted. To the basic rule of evidence applied by common-law judges that a witness must give facts and not conclusions, an exception developed that experts might express conclusions or opinions based upon the proved or known facts in matters outside the ordinary field of human experience which required special skill, study or learning. McCormick on Evidence, 21, § 11.

This court and the supreme court of the United States have different rules respecting the admissibility of an expert's opinion or conclusion upon the ultimate issue to be decided by a jury. This court held (*Metsker v. Mutual Life Ins. Co.*, 12 Wn. (2d) 618, 123 P. (2d) 347) that a physician witness might express such an opinion, but the United States supreme court held (*United States v. Spaulding*, 293 U. S. 498, 79 L. Ed. 617, 55 S. Ct. 273) such testimony inadmissible because it usurped the function of the jury. It is but fair to say that the two groups of the most eminent legal scholars in the field of evidence sanction admissibility.[2] The cases are in irreconcilable conflict:

[2] "(1) In testifying to what he has perceived a witness, whether or not an expert, may give his testimony in terms which include inferences and may state all relevant inferences, whether or not embracing ultimate

"An opinion or conclusion of a witness, including skilled or expert witnesses, ordinarily is excluded from evidence where such opinion or conclusion is determinative of vital issues or of the ultimate fact in issue." 32 C. J. S. 74, § 446; see, also, McCormick on Evidence, 24, § 12 (1954 ed.).

All agree, however, that the jury is the final arbiter and may accept or reject such opinion testimony in whole or in part. 20 Am. Jur. 1056, Evidence, §§ 1206, 1208; *Riblet v. Spokane-Portland Cement Co.*, 45 Wn. (2d) 346, 349, 350, 274 P. (2d) 574; *Richey & Gilbert Co. v. Northwestern Natural Gas Corp.*, 16 Wn. (2d) 631, 649, 134 P. (2d) 444, quoting text of American Jurisprudence; *Winsor v. Bourcier*, 21 Wn. (2d) 313, 150 P. (2d) 717; *Gordon v. Bartell*, 182 Wash. 268, 46 P. (2d) 1063.

Certain it is, nevertheless, that in the trial of personal injury actions, this court has disapproved instructions singling out medical testimony for special credence. *Murgatroyd v. Dudley*, 184 Wash. 222, 50 P. (2d) 1025.

Laws of 1911, chapter 74, § 20, p. 368 [*cf.* Rem. Rev. Stat., § 7697], provides:

"In other respects the practice in civil cases shall apply."[3] This court sustained a verdict for permanent injuries upon the testimony of lay witnesses in *Payne v. Whatcom County R. & Light Co.*, 47 Wash. 342, 346, 91 Pac. 1084. We held:

"It is also claimed that the court erred in submitting to the jury the question of permanent injuries and in giving instructions in regard thereto, for the reason that there was

issues to be decided by the trier of fact, . . . ." American Law Institute Model Code of Evidence, 199, chapter 5.

"(4) Testimony in the form of opinions or inferences otherwise admissible under these rules is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of the fact." Uniform Rules of Evidence 56 (4), 193, as set out in Handbook of the National Conference of Commissioners on Uniform State Laws (1953).

[3]The present statute, Laws of 1957, chapter 70, § 64, p. 304, is:

"(RCW 51.52.140) Except as otherwise provided in this chapter, the practice in civil cases shall apply to appeals prescribed in this chapter. Appeal shall lie from the judgment of the superior court as in other civil cases. The attorney general shall be the legal advisor of the department and the board."

But the law in force at the time of the accident controls. *Thorpe v. Department of Labor & Industries*, 145 Wash. 498, 261 Pac. 85.

no testimony tending to show permanent injuries. The weakness of this contention lies in the fact that there was some testimony tending to prove permanent injury. It is true that the testimony of the physicians called as expert witnesses probably did not sustain this contention, but the testimony of the plaintiff Millie Payne and her co-respondent, her husband, Thomas Payne, and the testimony of other of the plaintiffs' witnesses does sustain it. The testimony of expert witnesses is not exclusive, and does not necessarily destroy the force or credibility of other testimony. The jury has a right to weigh the testimony of all the witnesses, experts and otherwise, and the same rule applies as to the weight and credibility of such testimony."

That passage was quoted with approval in *Olson v. Weitz,* 37 Wn. (2d) 70, 76, 221 P. (2d) 537 (1950).

It is well to briefly trace the history of judicial review of permanent partial disability awards. That question was limited in the original appeal section (Laws of 1911, chapter 74, § 20), to ascertaining whether the industrial insurance commission acted arbitrarily or not; that is to say, whether there was evidence to sustain the administrative finding even though the court might think an erroneous conclusion had been reached. *Sweitzer v. Industrial Ins. Comm.,* 116 Wash. 398, 199 Pac. 724. By the recast of that section (Laws of 1927, chapter 310, § 8, p. 850), the superior court was authorized to determine the amount of the permanent partial disability award. *Johnston v. Department of Labor & Industries,* 163 Wash. 549, 2 P. (2d) 67. The metamorphosis was complete.

By a series of decisions in 1938 (*Hodgen v. Department of Labor & Industries,* 194 Wash. 541, 78 P. (2d) 949; *Devlin v. Department of Labor & Industries,* 194 Wash. 549, 78 P. (2d) 952; *Russell v. Department of Labor & Industries,* 194 Wash. 565, 78 P. (2d) 960), a jury's verdict was held to be advisory only, and this court itself determined the weight, credibility and preponderance of the evidence, to which the legislative reaction was almost instantaneous because it granted the unqualified right to trial by jury and accorded such verdicts the same sanctity as in actions at law.[4]

Before the jury act of 1939, it was held (*Matson v. Department of Labor & Industries,* 198 Wash. 507, 88 P. (2d) 825; *Kavaja v. Department of Labor & Industries,* 126 Wash. 284, 218 Pac. 196) that the actual facts must be determined from the testimony of medical witnesses, but after the jury act of 1939 (Laws of 1939, chapter 184, p. 579), the court significantly held (*Otter v. Department of Labor & Industries,* 11 Wn. (2d) 51, 56, 118 P. (2d) 413), the rule announced in the earlier cases had no application in trials by jury because the statute provided the jury's verdict had the same force and effect as in actions at law.

In other jurisdictions verdicts are not dependent upon the testimony in figures by a physician witness of the percentage of permanent partial disability. *Traders & General Ins. Co. v. Snow* (Tex. Civ. App.), 114 S. W. (2d) 682, 688; *Hampton Roads Stevedoring Corp. v. O'Hearne* (C. C. A. 4th, 1950), 184 F. (2d) 76; *Montgomery Ward & Co. v. Industrial Comm.,* 105 Colo. 22, 94 P. (2d) 689; *Texas General Indemnity Co. v. Mannhalter* (Tex. Civ. App.), 290 S. W. (2d) 360; *Blackstock Oil Co. v. Murtishaw,* 184 Okla. 312, 87 P. (2d) 308; *Wade v. Calcasieu Paper Co.,* 229 La. 702, 86 So. (2d) 540, 542. The legislature made the court or jury the trier of the facts, not physician witnesses.

Nor does *Wissink v. Department of Labor & Industries,* 40 Wn. (2d) 672, 245 P. (2d) 1006, compel a different conclusion. The requirement that a physician testify as to his conclusion as to the percentage of disability to sustain an increased permanent partial disability award, could not have been a question in that case. The point at issue was the admissibility of such testimony. Therefore, the following sentence is only dictum and is not controlling:

"Medical men are the only ones considered qualified to give an opinion on the amount of disability in terms of percentage."

---

[4]"In all appeals to the superior court from any order, decision or award of the joint board of the Department of Labor and Industries, either party shall be entitled to a trial by jury upon demand. The jury's verdict in every such appeal shall have the same force and effect as in actions at law. . . ." Laws of 1939, chapter 184, p. 579.

The significance of such an expression is governed by the following quotation from Chief Justice Marshall's opinion in *Cohens v. Virginia,* 19 U. S. 264, 398, 5 L. Ed. 257:

"It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated."

Moreover. this court approved that rule in *Ingham v. Wm. P. Harper & Son,* 71 Wash. 286, 128 Pac. 675, in sanctioning the following statement from Wells, Res Adjudicata and Stare Decisis, § 581, p. 527:

" 'Not whatever a court may happen to say, in a perhaps discursive argument of a cause, or even several causes, but has regard only to points and adjudications actually involved, as essential elements, in the questions in actual controversy.' "

Accord (1) *State ex rel. Lemon v. Langlie,* 45 Wn. (2d) 82, 273 P. (2d) 464; (2) *In re Levas' Estate,* 33 Wn. (2d) 530, 206 P. (2d) 482; (3) *Gilmour v. Longmire,* 10 Wn. (2d) 511, 117 P. (2d) 187; and (4) *State ex rel. Todd v. Yelle,* 7 Wn. (2d) 443, 110 P. (2d) 162.

We are told that *Kirkpatrick v. Department of Labor & Industries,* 48 Wn. (2d) 51, 290 P. (2d) 979; *Dotson v. Department of Labor & Industries,* 48 Wn. (2d) 855, 296 P. (2d) 1006; *Clayton v. Department of Labor & Industries,* 48 Wn. (2d) 754, 296 P. (2d) 676; *Prince v. Department of Labor & Industries,* 47 Wn. (2d) 98, 286 P. (2d) 707; and *Moses v. Department of Labor & Industries,* 44 Wn. (2d) 511, 268 P. (2d) 665, compel reversal. It is claimed from those cases that a judgment may not stand unless a physician witness testifies as to the ultimate fact to be determined

by the trier of the fact, which here is the percentage of disability.

Those cases are based upon *Karniss v. Department of Labor & Industries,* 39 Wn. (2d) 898, 239 P. (2d) 555, which was an appeal from an order refusing to reopen an industrial insurance claim based upon an increase in the disability occurring after the claim was closed which is authorized by Laws of 1911, chapter 74, § 5 (h), p. 356, 360, presently codified as RCW 51.32.160, and, so far as material, is as follows:

"If aggravation, diminution, or termination of disability takes place or be discovered after the rate of compensation shall have been established or compensation terminated in any case the department may, upon the application of the beneficiary or upon its own motion, readjust for future application the rate of compensation in accordance with the rules in this section provided for the same, or in a proper case terminate the payments."

The purpose of this statutory provision, which is common to most industrial insurance and workmen's compensation acts, was graphically explained by the United States supreme court in *Gange Lbr. Co. v. Rowley,* 326 U. S. 295, 306, n. 15, 90 L. Ed. 85, 66 S. Ct. 125, as follows:

"It was exactly to prevent such rigid finality that the statute preserved both the Department's unlimited power to reopen the case and the employee's power to have it reopened as a matter of right during the limited period. From the beginning the Act seems to have been drawn to avoid the crystallizing effects of the doctrine of *res judicata* in relation to awards, whether as against the employer or the employee. The idea apparently was that the initial award for an injury would afford compensation for harms then apparent and proved. But it was recognized, on the one hand, that all harmful consequences might not have become apparent at that time and, on the other, that harms then shown to exist might later be terminated or minimized. Cf. *Choctaw Portland Cement Co. v. Lamb,* 79 Okla. 109, 110, 189 P. 750. The purpose of the provisions for reopening, whether at the instance of the employer, the employee, or the Department, cf. notes 5 and 14, obviously was to prevent the initial award from finally cutting off power to take account of these later frequent developments. It was to

maintain a mobile system, capable of adapting the amount of compensation from time to time in accordance with the facts relating to the injurious consequences for disability as they actually develop, not to cut off rigidly the power either to increase or to decrease the compensation once an award had become 'final' for purposes of appeal."

The *Karniss* case decided that an order closing a claim is *res judicata* as to any issue before the department at the time of entry, but is not *res judicata* as to an increase in the disability occurring subsequently. The physician who testified in that case had not examined Karniss at the time the claim was closed, and, consequently, did not have testimonial knowledge of a change in the workman's condition, and, therefore, Karniss failed to sustain the statutory burden of proof. But there is no justification for holding that there must be testimony from a physician witness as to the percentage of the disability in a direct appeal from an order adjudicating the disability.

Such, then, are the reasons for my dissent.

FINLEY, J., concurs with FOSTER, J.